## GLENS FALLS INDEMNITY CO. v. BASICH BROS. CONST. CO.

### No. 11658.

Circuit Court of Appeals, Ninth Circuit.

Feb. 3, 1948.

Rehearing Denied March 3, 1948.

John E. McCall, of Los Angeles, Cal. (Robert E. Ford and Joseph J. Burris, both of Los Angeles, Cal., of counsel), for appellant.

Stephen Monteleone and Tracy J. Priest, both of Los Angeles, Cal. for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

On January 25, 1945, the United States of America entered into a contract with appellee, Basich Brothers Construction Company, for the construction of various airport facilities at Davis-Monthan Airfield, situate at or near Tucson, Arizona. On February 7, 1945, appellee let to a firm, operating under the name of Duque and Frazzini, a special contract under which the said Duque and Frazzini were to furnish certain of the materials to be used by appellee in the performance of its prime contract. Appellant, Glens Falls Indemnity Company, executed a bond whereby and wherein they guaranteed the faithful performance by Duque and Frazzini of their subcontract. Duque and Frazzini defaulted and appellee instituted an action in the District Court against appellant as said surety and recovered judgment in the sum of $79,-582.91, together with interest in the sum of $8,557.49, and costs of suit.

The defense made by appellant in the District Court is the same as the contentions made here on appeal, namely, that the right of appellee to recover against the surety by reason of the default of Duque and Frazzini was destroyed because of the failure of the appellee to perform certain alleged conditions precedent required by said bond, and other alleged defaults on the part of appellee.

■ In a determination of the questions presented on this appeal the bond and contract must be read together and construed reasonably as a whole. Roberts v. Security Trust & Savings Bank, 196 Cal. 557, 238 P. 673.

It appears that during the period from the commencement of the work to June 1945, appellee paid out for the account of Duque and Frazzini a sum substantially in excess of the moneys actually earned by it under the subcontract. These sums were in the first instance due to be paid by Duque and Frazzini and included such items as the payroll of the laborers working under the subcontract. These payments were made by appellee because Duque and Frazzini failed to meet the obligations and appellee was compelled to do so in order to keep its important wartime project under way, and also for the purpose of mitigating damages. Appellant contends that by making payments for the account of Duque and Frazzini in excess of the amount earned by said Duque and Frazzini, appellee violated Article XVI of the subcontract;[1] and moreover failed to perform the condition precedent set out in the bond which required appellee to "retain the last payment payable by the terms of said contract, and all reserves and deferred payments retainable by the obligee [appellee] under the

---

[1] Subcontract Agreement. * * *
"Article XVI. Partial Payment.
"Partial payments for work performed under this agreement will be made by the Contractor on the basis of 90% of engineers estimate and 90% of useable materials in stockpile. In the event the Subcontractor is indebted to the Contractor for cash advances, supplies, materials, equipment, rental, labor, insurance on labor, or other proper charges against the work, the amount of such indebtedness may be deducted from any payment or payments made under this provision."

terms of said contract". In this regard, it is argued that appellee's complaint fails to state a cause of action inasmuch as the complaint shows on its face that appellee paid out for labor, materials and equipment $36,456.61 in excess of the gross earnings under the subcontract. Appellant points out that had appellee paid out no more than 90 per cent of the moneys earned by Duque and Frazzini and retained the last payment, and all reserves and deferred payments, appellee would have had in its possession a surplus of money, belonging to the subcontractors, on the date the subcontractors abandoned the project.

The question thus posed is whether or not the said payments made by appellee altered, without its consent, the original obligation of appellant, or impaired its rights and remedies against Duque and Frazzini. If so, the obligation of the surety was exonerated. (Civil Code of Calif. § 2819) We conclude that they did not. The said payments made to laborers and suppliers were required by the terms of the subcontract.[2]

In a letter sent to appellant on May 24, 1945, appellee referred to the fact that it was making payments for labor and materials in excess of the amounts earned by subcontractors; and appellant replied that under Article XXI of the subcontract appellee was required to make such payments. Both parties construed the contract as authorizing and obligating the full payment by appellee of such items as the weekly payrolls whether or not in excess of the amounts earned by the subcontractor. The payments were necessary in order that there be no delay in the prosecution of the work with resultant serious damage.

Appellant also contends that it is relieved from liability because of the failure of appellee to give notice, as required by the surety agreement, within 20 days of learning of the default of Duque and Frazzini. It is argued that Duque and Frazzini defaulted as early as February 19, 1945 in that they did not commence work in time, and also that they defaulted in that they did not erect two plants each with a production capacity of 800 yards of material as required by the contract. The contract does not specify the nature of the work that was to commence on February 19. The evidence discloses that installation work commenced February 11th and production February 25th. As to the erection of plants having a capacity of 800 yards, the contract does not specify the date at which such plants were to be completed. It would have been impossible to complete them until sometime after February 19th. Material was being prepared sufficient for the use of appellee; in fact some material was being stockpiled for some weeks and no failure to supply on the part of Duque and Frazzini occurred until some time in April. We perceive no obligation on the part of appellee to serve notice on appellant of any default on the part of Duque and Frazzini until failure to supply needed material occurred. Appellee had no knowledge of a default until the material began to run short in April. As early as April 5th both Duque and Frazzini and the appellant were notified by appellee that the material produced was not sufficient. On April 17 or 18, appellee informed a Mr. Bray, appellant's representative, that Duque and Frazzini's engineering setup was inadequate. On April 27th appellee informed appellant that unless Duque

2 Subcontract Agreement. * * *
"Article XI. Payment for Labor and Supplies.
"The subcontractor shall promptly make payment to all persons supplying him with labor, materials and supplies for the prosecution of the work or in connection therewith. Any such payments not made by the subcontractor when due may be made by the contractor and the amounts thereof deducted from any moneys at any time due the subcontractor under this agreement."
"Article XXI. Special Provisions. * * *

"3. Duque & Frazzini to submit weekly payrolls by Monday night of each week for the previous week which closes on Saturday at midnight to Basich Brothers Construction Co. Basich Brothers Construction Co. to pay labor, compensation, insurance, public liability, property damage, Arizona employment insurance, Federal Old Age, Excise Tax on employers and any other insurance on labor and charge same to Duque & Frazzini, which amounts are to be deducted from amount earned."

and Frazzini installed adequate equipment the appellee would step in and do so. The finding of the District Court that appellant had received sufficient and timely notice of the defaults of Duque and Frazzini finds ample support in the evidence.

During this entire period, however, appellant indicated no desire to take action providing for the operation of the plant, this in face of the warning of April 27th, reiterated on June 1st. Finally, when the project was abandoned on about June 8th, appellee informed the surety of the abandonment, and of the government's insistence that the work be prosecuted; and indicated that they were taking over the work to minimize damages. Again, appellant failed to indicate that it had any intention to proceed with the work.

We are convinced appellee was diligent in meeting the conditions required of it by the bond.

And further, it is urged that appellee concealed from the surety that Duque and Frazzini were in default when the bond was delivered. Such contention finds no support in the record. Moreover, it was the surety and not appellee who was chargeable with notice of the integrity of Duque and Frazzini and their ability to perform. Sherman v. American Surety Company, 178 Cal. 286, 173 P. 161.

The contention of appellant that appellee interfered with the performance of the subcontract and made changes in the specifications after the bond was given, is without merit. On the contrary, the record indicates that appellee made every reasonable effort to secure the performance of the contractual obligations which appellant had guaranteed. Appellee's energies were devoted to averting a default and to securing, so far as possible, a performance of that which the appellant guaranteed.

It is argued that appellee, by taking over the operations of the Duque and Frazzini plants, pursuant to the notice of June 8th, prevented appellant from exercising its right under the terms of the bond to take over and operate, or secure some one to take over and operate, the Duque and Frazzini plants within 30 days after notice of the inability of the subcontractor to perform. Appellant was informed as early as April 27, 1945, that the subcontractor was not meeting the terms of its contract; that the equipment in use was inadequate and that unless this situation was corrected it would be necessary for appellant to take over in order not to delay important installations, the completion of which the War Department was demanding. It became imperative that appellee take over in order to minimize damages, after Duque and Frazzini abandoned their contract. Russell v. Ross, 157 Cal. 174, 106 P. 583.

As to alleged changes in the specifications, they were made primarily at the request of the government engineer and with the consent of the subcontractors. They consisted of changes in the maximum size of rock and the method of measurement and though it be true, as appellant insists, that a surety will be exonerated where changes are made without its consent and such changes are of such nature as will increase the surety's risk, the changes here are of small significance and in no way affect the risk of the surety. Bateman Bros. v. Mapel, 145 Cal. 241, 78 P. 734.

Appellant asserts that the trial court erred in admitting the testimony of witness George J. Popovich with regard to certain items in the bill of exceptions such as the payroll statements. The witness, office manager of appellee, was an accountant and had supervision of compiling the records about which he was questioned. The records themselves were kept in the course of business. There is no contention that his statements with regard to the record were incorrect. Under the circumstances we see no prejudice to appellant.

The trial court did not err in assessing interest on the principal amount due to appellee by appellant. The principal amount was definite and fixed and consisted merely of charges for such items as labor, materials, etc., in excess of the amount earned by Duque and Frazzini. Complete records of these items were maintained and were at all times available to appellant, and the reasonableness of the charges incurred had never been disputed.

Judgment affirmed.