In re William R. KECK, Bankrupt.

**UNITED AMERICAN BANK IN KNOXVILLE, Plaintiff,**

v.

**William R. KECK, Defendant.**

**Bankruptcy No. BK-3-78-492.**

United States Bankruptcy Court,
E. D. Tennessee.

April 7, 1980.

**518**

Raymond E. Lacy, Knoxville, Tenn., for plaintiff.

Robert M. Child, Knoxville, Tenn., for defendant.

### MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The question before this court is whether debts owing to the plaintiff should be excepted from discharge under the provisions of § 17a(2) of the Bankruptcy Act.[1] Two transactions are involved—a $5000 loan made by the plaintiff to the defendant on June 9, 1978, and a $25,000 loan made by the plaintiff to four individuals on July 31, 1978, on which obligation the defendant was a guarantor and not a principal.

### I

The facts, as stipulated by the parties, reflect that on June 9, 1978, the defendant executed and delivered to the plaintiff a promissory note in the amount of $5000. This note was a renewal of a series of notes dating back to September 13, 1977, or even to a date prior thereto. When the renewal note was executed, the defendant did not receive any additional funds, nor did he make any representation concerning his financial condition or ability to repay the debt.

On July 31, 1978, the defendant furnished the plaintiff with a financial statement. The statement was furnished to induce the plaintiff to accept the defendant as a guarantor on a loan to four persons, other than the defendant, in the principal amount of $25,000. The loan was made and was subsequently renewed by a note executed January 29, 1979, by the four principals, some four months after the defendant had filed a petition in bankruptcy. The defendant was not a party to the renewal note.

At the trial the defendant admitted that the financial statement was materially false in two instances. The statement reflected that the defendant owned certain real estate when, in fact, he had sold this property several months earlier. He also listed his salary at $40,000 per year when, in fact, his salary was less than $25,000 per year.

On September 29, 1978, the defendant filed a petition in bankruptcy. On November 13, 1978, the plaintiff filed its original complaint alleging that the defendant had made materially false and misleading representations in the financial statement, with the intent to mislead the plaintiff. Plaintiff asked for judgment on the $5000 note in that amount and a determination of nondischargeability. On January 10, 1979, plaintiff amended its complaint seeking in the alternative judgment in the amount of $5000 compensatory damages, and $25,000 punitive damages,[2] and a determination of nondischargeability.

---

1. § 17. Debts Not Affected by a Discharge. a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . except such as . . .

   (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, . . . . 11 U.S.C. § 35(a)(2) (1976).

2. "Punitive damages are designed to punish a wrongdoer. They are not awarded in every or even most intentional tort cases but are meted

Although plaintiff's pleadings and contentions cannot be considered a model of clarity and consistency, it appears that plaintiff seeks recovery on two grounds. First, with reference to the June 9 transaction, i. e., the $5000 loan, plaintiff, while conceding that the defendant made no written or verbal statement regarding his financial condition, asserts that "his silence, or failure to speak" was tantamount to deceit and misrepresentation as contemplated by § 17a(2) of the Bankruptcy Act (11 U.S.C. § 35a(2) (1976)), thereby establishing a nondischargeable debt. Secondly, with reference to the July 31 transaction when the defendant guaranteed a $25,000 loan to four individuals, after submitting an admittedly false financial statement, plaintiff alleges that its damages are equal to the amount owing at the time the loan was renewed, $21,167.06, since the defendant's bankruptcy precluded plaintiff from requiring his signature on the renewal note. "It would not be mere speculation but rather a reasonable conclusion that the loss or actual damages sustained by Plaintiff would be in an amount of at least $100.00, if not the total amount of $21,167.06, in addition to an award of [$25,000.00] punitive damages to punish the Defendant." Plaintiff's post-trial brief, pp. 3, 4.

Plaintiff asserts that each of its claims "sounds both in tort and alternatively in contract."

## II

*June 9, 1978, Note*

On this date the defendant borrowed $5000 from plaintiff. No written or oral representation concerning the defendant's financial condition was requested by the plaintiff or volunteered by the defendant. Plaintiff's sole contention at this time is that the defendant had an affirmative duty to advise plaintiff at the time the loan was negotiated that he was experiencing financial difficulties. Plaintiff relies on "equitable estoppel," citing Prosser, § 105, at 692,

out only where defendant's conduct is particularly reprehensible. Punitive damages are a

to the effect that equitable estoppel "does not depend upon positive misrepresentation, but is based upon a mere failure to take action." Plaintiff's brief, p. 3.

■ The Bankruptcy Act is remedial in nature and the exceptions set forth in § 17a(2) are to be strictly construed. *In re Parker*, 5 BCD 1035, 1036 (1979). In *Parker* this court cited with approval Remington on Bankruptcy 6th Ed., Vol. 8, § 3320, as follows:

> "All elements of actionable fraud must be present before a claim can fall within the exception, and it must accordingly appear (1) that the defendant made a material representation; . . . (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

■ The fraud referred to in § 17a(2) of the Act means positive fraud or fraud in fact, involving moral turpitude or intentional wrong and not implied fraud which may exist without the imputation of bad faith or immorality. See *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586; *Western Union Cold Storage Co. v. Hurd*, 116 F. 442 (WD Mo.1902); *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915). *U. S. v. Syros*, 254 F.Supp. 195 (DC Mo.1966). Vol. 1A, Collier on Bankruptcy, ¶ 17.16[3] at pp. 1633–1635.

■ Fraud is never presumed; it must be proven. *Snapp v. Moore*, 2 Tenn. 236 (1814). In *Groves v. Witherspoon*, 379 F.Supp. 52 (ED Tenn.1974), the court held that, except where a fiduciary relationship exists, fraud must be proven by "*clear and cogent* evidence." (Emphasis added).

· "Prior decisions unanimously require proof of actual fraud involving moral turpitude . . . In order for § 17 sub. a(2) to bar a discharge the party alleging fraud must meet the requirements of proving positive fraud." *Wright v. Lubinko*, 515 F.2d 260 (9th Cir. 1975).

rare instance where civil law punishes." Fisher, The Legal System, 2d Ed., p. 323.

■ It is true that the false representation need not be made in writing in order that the debt be excepted from discharge under § 17a, but there must be some false representation either verbally or in writing, 1A Collier on Bankruptcy, 14th Ed., § 17.16. Absent such representation, a mere promise to repay a loan in the future does not meet the test of § 17a(2) and does not make the debt nondischargeable in bankruptcy.

■ The false financial statement was not furnished to plaintiff until July 28, some six or seven weeks after the June 9 loan. The statement, of course, could not have been relied upon by plaintiff since it was not even in existence when the June 9 loan was made and played no part in the transaction, which actually concerned the renewal of several other renewal notes. Section 17a(2) requires an extension or renewal of credit in reliance upon a materially false statement in writing if the debt is to fall within the provisions of that section.

Plaintiff has failed to prove fraud, only a promise to pay which was broken. The $5000 debt is dischargeable.

*July 31 Loan*

■ Defendant was one of five persons involved in the July 31 transaction. Defendant submitted the financial statement in order to induce plaintiff to accept his guaranty on the $25,000 note. Stipulation No. 4. Defendant received no proceeds from the loan. Some two months after the loan was made, defendant filed a petition in bankruptcy. The note was renewed in January 1979 but the defendant did not sign the renewal note. The balance owing on the note at this time is $21,167.06.

Defendant admits that the financial statement given to plaintiff was materially false. Thus, the first requirement of nondischargeability is met. Plaintiff has failed, however, to meet the second requirement—that it relied upon the statement when making the loan. It is stipulated that Noah Millsaps, plaintiff's employee who was responsible for granting the loan, was not aware of the financial statement until September 29, 1978, almost two months *after* the loan was made.

The $25,000 obligation is dischargeable not only because the plaintiff has failed to show reliance upon the statement but because the plaintiff has failed to show that it has suffered any loss as a result of the financial statement. The July loan was repaid by a renewal note dated January 29, 1979. Plaintiff asserts that due to the automatic stay provisions of Bankruptcy Rule 401 it was unable to include the defendant as a party to the renewal note. Plaintiff now contends that it has been damaged because it has lost its rights of recourse against the defendant.

Plaintiff had other remedies available, however. Plaintiff was not required to renew the loan. It could have required the principal makers to repay the loan, each of whom was jointly and severally liable. Instead, plaintiff elected to renew the note and has failed to show that the renewal note will not be repaid. Plaintiff seeks damages against the defendant in an amount equal to the amount of the renewal note or, in the alternative, the value of its right of recourse against the defendant, which it now fixes at not less than $100, a figure unsupported by any evidence.

■ Under the proof adduced in this case, any damages assessed by the court would be speculative. The law of Tennessee, however, is that speculative damages cannot be recovered. *Maple Manor Hotel, Inc. v. Nashville*, 543 S.W.2d 593 (Tenn.App. 1975). This prohibition applies only where the fact of damages is uncertain, but not where the amount alone is uncertain. *Koehler v. Cummings*, 380 F.Supp. 1294 (D.C.Tenn.1974). *Coverdell v. Mid-South Farm Equipment Ass'n*, 335 F.2d 9 (6th Cir. 1964); *Acuff v. Vinsant*, 59 Tenn.App. 727, 443 S.W.2d 669 (1969). In the case before this court, plaintiff has failed to establish that it has suffered any damages since the makers of the note remain liable to the plaintiff for the full amount of the obligation guaranteed by the defendant, including principal, interest and costs of collection. Since the plaintiff has failed to show any actual damages it has not satisfied the pre-

requisite for the recovery of punitive damages. *Hutchison v. Pyburn*, 567 S.W.2d 762 (Tenn.App.1977). *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241 (Tenn. 1977).

In *Hutchison v. Pyburn*, 567 S.W.2d 762 (1977), plaintiff/vendee brought suit against the defendant alleging fraud and misrepresentation in the sale of realty, seeking recission of the deed and punitive damages.[3] The trial court allowed plaintiff's recission of the contract, awarded incidental damages of $3,168.94, and punitive damages of $5000.00, finding specifically that the defendant's misrepresentation was fraudulent. Upon appeal the court of appeals first pointed out that in Tennessee courts of equity are empowered to award punitive damages. The court also held there was no inconsistency with the remedy of recission and an award of punitive damages, the latter being designed to penalize and deter and results from the nature of the defendant's conduct rather than the harm it causes. The court then referred to the Tennessee cases that announce the rule that there must be proof of "actual damages" before punitive damages may be awarded, observing that the cases are unclear as to the meaning of "actual damages" in this context. "It has been logically suggested that the phrase should mean no more than the plaintiff cannot get punitive damages without proving a valid cause of action, that is, without showing that he has been legally injured in some way, which is really a roundabout way of saying that there can be no cause of action for punitive damages alone", p. 765. The court could perceive no good reason to preclude an award of punitive damages in a suit for equitable rescission and incidental damages and held, as a matter of law, that punitive damages are available in such a case if the plaintiff can demonstrate the requisite degree of bad conduct and intent on the part of the defendant.

The most recent decision of the Supreme Court on the interpretation of the "actual damages" requirement is *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241 (1977). In that case a landowner brought an action against a developer for trespass arising from an unauthorized removal of topsoil from a lot. The trial court entered judgment on the jury's verdict awarding $1500 compensatory and $2500 punitive damages. The court of appeals reversed, holding that the proof did not support an award of compensatory or punitive damages. The Supreme Court held that the award of compensatory damages could not stand, since all the actual damages suffered by the property owner had already been paid by the services rendered by the defendant in restoring the lot to its original condition. The court then went on to discuss the award of punitive damages.

"[2] This leaves for our consideration the matter of punitive damages, as affected by the general rule in this jurisdiction that actual or compensatory damages must be found as a predicate for the recovery of punitive damages. This rule was first fully developed in Tennessee in the landmark case of *Allen, et al., v. Melton*, 20 Tenn.App. 387, 99 S.W.2d 219 (1936), wherein the late Judge Faw, with characteristic clarity, discussed the matter in some detail, citing numerous authorities and cases.

"This general rule was followed in *Liberty Mutual Ins. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760 (1963), wherein the Court held that to sustain an award of punitive damages, actual damages must have been awarded.

"In *Lazenby v. Universal Underwriters Insurance Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964) the Court held that punitive damages are allowed only after an award of compensatory damages.

"*Lazenby* was followed by the Sixth Circuit, applying Tennessee law, in *Dill v. Greyhound Corporation*, 435 F.2d 231 (6th Cir. 1970).

**3.** The court noted that punitive or exemplary damages are awarded to punish a defendant for his wrongful conduct and to deter others from similar conduct in the future. "They are awarded in cases of fraud, malice, gross negligence, or oppression, or in similar cases involving wilful misconduct." *Hutchison v. Pyburn*, supra, at 764.

"The courts of Tennessee appear to follow the majority rule although a small number of jurisdictions allow punitive damages as an independent basis of recovery, and a number of states have held that the plaintiff must have received injuries entitling him to compensation, although no actual award of compensatory damages were made. A substantial number of jurisdictions recognize nominal damages as a proper predicate. See Annotation, 17 A.L.R.2d 527, actual damages as a necessary predicate of punitive damages.

"The underlying consideration seems to be that there must be some actual loss supported by proof. We do not at this time and in this case feel any need to alter, erode or modify prior Tennessee case law. Here, actual damages were clearly demonstrated. In effect, Grand Valley Lakes, Inc. recognized its liability and pre-paid it by the expenditure of time, effort and money in restoration. This is sufficient to remove this case from the application of the general rule. Surely, had Grand Valley Lakes not made the restoration and the landowner had restored at her own expense, there would be a predicate of actual damages and an award of punitive damages would be soundly based. In legal effect, we see no difference.

"We hold that there was a proper predicate under the facts of this case for an award of punitive damages."

Plaintiff's proof is insufficient to support an award of actual damages. Plaintiff's proof is also insufficient to remove this case from the general rule followed in this state regarding punitive damages. It therefore follows that neither actual nor punitive damages may be allowed.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.