**In re Fred H. ARM, Debtor.**

**Fred H. ARM, Appellant,**

v.

**A. LINDSAY MORRISON, M.D., INC. and Merlin L. Neff, M.D., Inc., Appellees.**

**BAP No. CC–93–1763–VHJ.**
**Bankruptcy No. LA 92–37104–VZ.**
**Adv. No. LA 92–04809–VZ.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 20, 1994.

Decided Dec. 9, 1994.

Fred H. Arm, in pro. per.

Richard S. Price, Fullerton, CA, for appellees.

Before VOLINN, HAGAN and JONES, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

## OVERVIEW

The debtor and others formed a "Massachusetts Trust" which acted as surety for certain investment loans. The surety failed to pay on claims after the loans had defaulted. When the debtor filed his chapter 7 petition, the creditors brought an action under 11 U.S.C. § 523 to bar discharge of their claims. After trial, the bankruptcy court adjudged the debts nondischargeable. We AFFIRM.

## FACTS AND PROCEEDINGS BELOW

At the conclusion of trial in the underlying adversary proceeding to determine the dischargeability of debts alleged to be owed by debtor Fred H. Arm to two creditors, Dr. A. Lindsay Morrison and Dr. Merlin Neff, the trial court made the following findings of fact:[1]

Mr. Arm participated in the formation of an entity called La Jolla Fidelity Trust (La Jolla) with David Tate and Mr. Mackie. La Jolla issued surety bonds to individual lenders to ensure payment of loans made by them to certain borrowers. At least one of these borrowers, Mr. Halstead, was affiliated and associated with Mr. Arm, Mr. Tate, and Mr. Mackie.

The loans involved in these proceedings were borrowed by Mr. Halstead from Dr. Morrison and Dr. Neff. La Jolla issued surety bonds to Dr. Morrison and Dr. Neff to guarantee repayment of the loans. Each bond contained a "Certificate of Sufficiency" signed by "Sharon Turner, Trust Officer" representing that the surety had ample assets to secure any reimbursement. Mr. Arm testified that Sharon Turner was an employee of La Jolla. Mr. Arm signed these bonds in blank and delivered them to Mr. Halstead, who in turn gave them to the lenders, took their money, a total of $110,000, and gave them promissory notes in return. When Mr. Arm executed the bonds in blank he was ignorant of the addresses of the lender-obligees or the express terms of the loans.

Mr. Arm testified he believed when the bonds were issued that La Jolla was solvent by way of pledges by third parties of property amounting to over $40,000,000, including gold bullion in banks in the Far East and Nova Scotia, an island in Hawaii, and a herd of Arabian horses worth $15,000,000. Additional assets included a motion picture production company, 10 million shares of a publicly traded company, a company that created septic tank additives, and a radio station. The third parties, the actual owners of the assets, remained unnamed in the record, and Mr. Arm provided no documentary support for this testimony. The court found that Mr. Arm knew that La Jolla's control over these assets was "very shaky and unstable and uncertain."

Under the terms of the bonds, Mr. Halstead, as borrower, was required to provide La Jolla with information regarding the loans. When no information was forthcoming from Mr. Halstead, Mr. Arm testified that he threatened to and ultimately canceled the bonds by letter to Mr. Halstead on August 22, 1990. He did so without notifying the lenders.

Mr. Halstead did not repay the notes when due and asked Drs. Morrison and Neff for a series of extensions. These lenders, unaware that the bonds had been canceled, agreed to extend the loan terms. The lenders ultimately became concerned about repayment. On May 8, 1990, Mr. Arm wrote a letter to Mr. Halstead which stated that the term of the bonds would be extended for no additional consideration. Mr. Arm knew that this letter was intended to be seen by the lenders.

---

1. A state court found the debtor liable on the claims and awarded RICO damages as well, although this judgment remained pending on appeal in the state court of appeals as the instant proceedings took place. Appellees have quoted the state court record at length in their response brief here. Since the state court judgment is not final, and was not presented to the bankruptcy court, we will disregard it.

Pursuant to the letter, the bonds were ostensibly extended for 90 days from the date of the letter, May 8, 1990. Ninety days from May 8 is August 6. By letter dated and mailed August 6, 1990, the doctors' attorney wrote to Mr. Arm demanding payment on the bond. The letter was received by Mr. Arm on August 9. Mr. Arm responded, stating that the bonds had been canceled, that the renewal was defective for lack of consideration, and in any event, demand was untimely because the bonds had expired.

Drs. Morrison and Neff sued Mr. Arm in state court. They won a judgment for some $1,000,000 that included RICO treble damages. As noted, this judgment is currently on appeal. After Mr. Arm filed his chapter 7 bankruptcy, the doctors commenced an adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A).

After trial, in addition to the findings referred to above, the court found that the bonds constituted representations, in that they purported to guarantee the loans. The court found that Mr. Arm intentionally made these representations by creating the bonds and writing the letter purporting to extend them. The court found that the bonds constituted false representations because La Jolla was financially unable to perform its suretyship when it issued the bonds and that Mr. Arm knew or should have known the falsity of the representations, or that he was reckless in making them. The court found that the representations were intended to deceive the plaintiffs into lending money to Mr. Halstead, that the plaintiffs relied on the representations, that their reliance was justified,

and that, but for the misrepresentations, the plaintiffs would not have extended credit to Mr. Halstead.

Mr. Arm brings this timely appeal.

## ISSUES PRESENTED

1. Whether for the purposes of § 523(a)(2)(A), money, property or services must be received personally by the debtor.

2. In briefing his appeal, debtor propounds various other issues, which in substance reduce to whether the evidence adduced supports a claim under § 523(a)(2)(A).[2]

## STANDARD OF REVIEW

■ Findings of fact are reviewed for clear error; conclusions of law are reviewed *de novo*. *In re Siriani*, 967 F.2d 302, 303–04 (9th Cir.1992).

## DISCUSSION

### I.

1. Section 523(a)(2)(A) excepts from discharge any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud....

11 U.S.C. § 523(a)(2)(A).

■ Debtor raises an issue of law based on the factual premise that he personally did not obtain "money, property, services, or an extension, renewal, or refinancing of credit."[3] Debtor cites authority for the proposi-

---

2. Two of the debtor's issues miss the mark. As his issue III, the debtor contends that statements made by the borrower, rather than the debtor, cannot constitute misrepresentations for purposes of § 523: the plaintiffs testified that Mr. Halstead made representations regarding La Jolla's solvency. However, the trial court expressly dismissed this evidence and based its finding of misrepresentation on debtor's execution of the bonds and extension letter. As issue IV, the debtor discusses whether La Jolla was properly registered with the state or was legally required to be. The court concluded expressly that La Jolla was so required, but this conclusion is not material to its ruling. Mr. Arm also argued at trial and on appeal that the plaintiffs failed to make timely claims on the bonds. The court did

not resolve this issue. Implicit in the court's findings and conclusions, however, was the determination that the bonds were fraudulent *ab initio;* this issue therefore is irrelevant. Mr. Arm also contends that the plaintiffs have unclean hands and should therefore take nothing. This argument is based on the contention that Halstead promised he would double the plaintiffs' money, and such promise constitutes usury. This argument is raised for the first time on appeal and we will not address it. *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir. 1985).

3. Appellees controvert this assertion, but it seems apparent that any fee received by the debtor or

tion that the debtor rather than a third party must be the beneficiary of the debtor's fraud. *In re Chavez,* 140 B.R. 413, 420 (Bankr.W.D.Texas 1992) (where debtor received no money directly from the representations made, no cause of action arises); *In re Rippey,* 21 B.R. 954, 958 (Bankr.N.D.Texas 1982) (stating the same in *dicta*).[4]

The trial court, however, found that Mr. Arm through La Jolla was involved in an affiliation with others who were associated with the borrowers and that La Jolla and the borrowers comprised a scheme. Although Mr. Arm contends he was an innocent dupe of his associates who were more directly involved in this scheme, the court on the evidence found otherwise. Section 523(a)(2)(A) does not limit exception from discharge of compensatory damages arising from a fraud committed by an affiliation to that certain portion of the money, property or services obtained directly by the debtor.

■ *Collier on Bankruptcy* discusses the issue, focusing on circumstances where an individual acts as guarantor for loans to his corporation, and approves a court-fashioned "indirect benefit doctrine," which is akin to piercing the corporate veil. *See In re Nowell,* 29 B.R. 59, 65 (Bankr.N.D.Miss.1982) (citing *Levy v. Industrial Finance Corp.,* 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572 (1928)). *Collier* states that the better view "seems to be" that the debtor need not actually be the direct beneficiary of his fraud. 3 *Collier on Bankruptcy* ¶ 523.08[1] at 523–46 (15th ed. 1994). We agree. Debtor argues that he received no indirect benefit, and as a mere surety, no benefit comparable to the total amount of the loans. As indicated, the court found La Jolla, as a participant in the scheme, directly benefitted. Debtor contends that La Jolla, not he, issued the bonds and received the fee. The "indirect benefit" doctrine defeats this argument. As Mr. Arm was La Jolla's principal, the indirect benefit doctrine serves as a basis for excepting his personal liability from discharge.

La Jolla would be small compared to the money received by the actual borrower.

II.

■ In order to prevail on a claim under § 523(a)(2)(A), a creditor must prove (by a preponderance of the evidence):

(1) a representation of fact by the debtor,

(2) that was material,

(3) that the debtor knew at the time to be false,

(4) that the debtor made with the intention of deceiving the creditor,

(5) upon which the creditor relied,

(6) that the creditor's reliance was reasonable,

(7) that damage proximately resulted from the misrepresentation.

*In re Rubin,* 875 F.2d 755, 759 (9th Cir.1989) (citation omitted); *see also In re Britton,* 950 F.2d 602, 604 (9th Cir.1991).

The court made express findings for these factors, the first four based in great measure on the debtor's own testimony.

*(1) A representation of fact by the debtor.*

■ As found by the court, the bonds themselves constituted representations that La Jolla was ready and able to guarantee the loans, and the May 8 letter constituted a continuing assurance of that fact. This finding is self-evident; Mr. Arm's argument that he had no direct verbal contact with the lenders is irrelevant.

*(2) That was material.*

■ Mr. Arm points out that plaintiffs testified that their colleague, Dr. Zon, told them that the investment was a good deal, and contends that this reliance diminishes the materiality of the bonds. The court discounted this reliance. Plaintiffs stated that the bonds were an important factor in reaching their decision to loan money to Halstead, and the court was entitled to believe this testimony.

4. Debtor also cites *In re Keck,* 3 B.R. 517 (Bankr. E.D.Tenn.1980). While this case involved a debtor who acted as guarantor, the issue was not addressed.

*(3) That the debtor knew at the time to be false.*

Ample testimony supports the court's finding that Mr. Arm either knew the bonds were fraudulent or was recklessly indifferent to that fact.

 The debtor's testimony during examination by plaintiffs' counsel and the court amply supports a finding of reckless indifference to the truth, if not an outright intent to defraud. Reckless misrepresentations will support a cause of action under § 523(a)(2). *In re Martin,* 761 F.2d 1163, 1167 (6th Cir. 1985); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *Birmingham Trust National Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985); *In re Houtman,* 568 F.2d 651, 655–56 (9th Cir.1978); *In re Kurdoghlian,* 30 B.R. 500, 502 (9th Cir. BAP 1983). The court's finding therefore does not constitute error.

*(4) That the debtor made with the intention of deceiving the creditor.*

The court found that the bonds were intended to lure the plaintiffs into extending credit by creating a false sense of security. Mr. Arm does not dispute that the bonds were intended to create a sense of security. He argues that this intention cannot be considered deceitful, however, because La Jolla was ready and able to provide such. This approach fails in the face of the court's finding otherwise as to La Jolla's solvency.

*(5) Upon which the creditor relied.*

Both plaintiffs testified that they relied on the bonds. This testimony supports the finding by the court that the creditors did, in fact, so rely.

*(6) That the creditor's reliance was reasonable.*

The court found that the plaintiffs, although medical doctors with past investment experience, nevertheless were not sophisticated investors who could be expected to investigate the solvency of La Jolla. This finding is not clearly erroneous. It is additionally supported by exhibits of the bonds entered at trial. These documents were generated by Mr. Arm on his computer and laser printer. Although we have only photocopy duplicates, they appear to be professionally produced specimens, taking advantage of a personal computer's desktop publishing capacity to print borders and utilize different type styles and font sizes.

*(7) That damage proximately resulted from the misrepresentation.*

As the borrower defaulted on the loans, this finding is also self-evident.

As noted above, Mr. Arm raises an equitable defense that the surety should be exonerated because the terms of the loan were usurious, and therefore, the plaintiffs had unclean hands. The record is not sufficiently developed to determine Mr. Arm's assertion that the loans terms were illegal. The notes expressly limited interest to the legal limit. The only evidence otherwise consists of testimony by the plaintiffs that the bargain included a potential "bonus" depending on the success of the venture floated by the loans. The record is insufficiently developed to allow a determination that the trial court abused its discretion by failing to apply this equitable doctrine. In any event, this argument was not presented below, and we will not entertain it on appeal.

## CONCLUSION

The evidence is ample to support each of the trial court's findings of the requisite elements for a claim under § 523(a)(2)(A). Mr. Arm's arguments do not controvert these findings. The court expressly limited its ruling to compensatory damages, pursuant to *In re Levy,* 951 F.2d 196 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Appellees have not cross-appealed this issue.

The judgment is AFFIRMED.