In re Kim N. TRAN, Debtor.

Sea Win, Inc., Plaintiff,

v.

Kim N. Tran, Defendant.

Bankruptcy No. 02–50122–MM.
Adversary No. 02–5173.

United States Bankruptcy Court,
S.D. California.

May 30, 2003.

Harriet L. Goldfarb, Law Offices of Harriet L. Golfarb, San Mateo, CA, for Debtor.

Carol Wu, Pleasant Hill, CA, trustee.

## MEMORANDUM DECISION AND ORDER THEREON

MARILYN MORGAN, Bankruptcy Judge.

### I. Introduction

Before the court is the complaint of Sea Win, Inc., a/k/a Sea Win Co., Inc., against the debtor, Kim Tran, to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). Following a trial on the merits, the court concludes that the debt to Sea Win in the amount of $15,000, plus attorneys' fees, is nondischargeable pursuant to § 523(a)(2)(A).

### II. Facts

The defendant, Kim Tran, is well-educated. She received a B.S. degree in chemistry from Brigham Young University and took post-graduate courses in neurophysiology. She is also entrepreneurial and sophisticated in business. Upon graduation, Tran worked for a laboratory, then a marketing company, and in the mid–1990's success fully started and sold her own business, Sciquest Bioscience, Inc.

Apparently attempting to assist her mother, Anh Tran, who was in the seafood distribution business, Tran formed Kim Seafood International, Inc. in 1999. She employed her mother as the on-site manager for the processing facility at Pier 33 in San Francisco. As president and sole shareholder, Tran administered the company from her office suite in Santa Clara. Perhaps confusing to suppliers was that Tran's mother also answered to the name Kim Tran, with the result that in telephone conversations, suppliers might not realize that they were talking to Tran's mother rather than to the owner of the business.

On September 18, 2000, Tran applied for and, after a routine credit check, received a credit limit of $15,000 from plaintiff Sea Win, Inc., a wholesale distributor of seafood based in Los Angeles. As was customary with its corporate clients, Sea Win required a personal guaranty from Tran. The credit agreement provided that "[i]n the event it becomes necessary for Sea Win, Inc. to incur collection costs or institute suit to collect any amount due under the agreement or any portion thereof, the undersigned promises to pay such additional collection costs, charges, expenses, and attorneys' fees." The guaranty further provided, "[g]uarantor agrees to pay reasonable attorney's fee and all other costs and expenses which may be incurred by Seller in the enforcement of this guaranty."

Over the next two months, Sea Win asserts that it delivered more than $100,000 in seafood product to Kim Seafood's storage warehouse at Pier 33. Kim Seafood made payments totaling at least

$23,732, but has an unpaid balance of $78,525, which is disputed.

Tran testified that she was not involved in the day-to-day operations of Kim Seafood when the disputed orders were placed in November 2000. Because of a difficult pregnancy, Tran was only working part-time during that time. In fact, in April 2001, Tran gave birth to a stillborn child, a tragedy that deeply depressed Tran.

Even though she was not present when the orders were allegedly placed, Tran testified that the shipments are disputed because the lack of documentation is inconsistent with the strict business procedures she instituted at Kim Seafood. For example, Tran's internal procedures required that purchase orders be completed on Kim Seafood's form for all orders and that all deliveries be inspected and signed for. She denies that Kim Seafood ever allowed unsupervised access to its warehouse. Since Sea Win didn't produce purchase orders or signed bills of lading for its shipments, Tran disputes the billings.

Sea Win has been in business for eighteen years and has numerous employees. It provided three very credible witnesses. Henry Co, a sales representative and buyer for Sea Win, testified that "Kim" of Kim Seafood called frequently during October and November 2000 to place orders. After each telephone order, Co issued a bill of lading, arranging for carriage of merchandise to Pier 33 through Hai Trucking, an established trucking firm that had previously made deliveries to Kim Seafood on behalf of another supplier. The information from the bill of lading was input into the company computer, which generated an invoice. Invoices were immediately sent to Kim Seafood via fax and mail. Co testified that he never received any complaint about the shipments or the invoices that were faxed and mailed.

Co also testified that because he was concerned about non-payment by a customer of his, he personally drove from Los Angeles to Pier 33 sometime in early 2001 to find out why payments were not forthcoming. Co met with "Kim" Tran, whom he now believes to be the defendant's mother. "Kim" explained that she did not have help because her daughter had recently given birth to a child, had been ill and had been away from work. She further explained that she was far behind in her paperwork and payments to suppliers and that she didn't have the funds to pay him. Shortly after that meeting, Co called the defendant to inquire about payment. The defendant told him that she had only recently returned to work, but did not further explain the failure to make payment.

Khanh Tran, the credit manager of Sea Win, confirmed Co's testimony regarding the billing procedures at Sea Win. She further testified that Sea Win has an internal audit procedure to ensure the accuracy of invoices, and its bills of lading and invoices cannot be fabricated.

Finally, Hai Quach, the proprietor of and a driver for Hai Trucking, testified. Quach explained that deliveries to Pier 33 were generally made between 1:00 a.m. and 4:00 a.m. and that the customary practice for deliveries to Kim Seafood was to call a cellular telephone number so that a representative of Kim Seafood would tell the driver where to find a hidden key to the warehouse. The driver would locate the hidden key, gain access to the warehouse, unload the shipment, leave a copy of the bill of lading with the merchandise, secure the premises and return the key to its hiding place. Quach further testified that Kim Seafood did not have an attendant present at the warehouse when deliveries arrived in the early morning hours and that it never requested that he return

any merchandise to the shipper as unsatisfactory.

After Sea Win filed suit for breach of contract and common counts against Kim Seafood and Tran in the Superior Court for Santa Clara County, Tran filed this chapter 7 case. She scheduled a debt to Sea Win in the amount of $82,000. Sea Win thereafter commenced this adversary proceeding seeking to determine that the debt of Kim Seafood, guaranteed by the debtor, is not discharged in Tran's bankruptcy.

### III. LEGAL DISCUSSION

### A. *Plaintiff Met its Burden on Breach of Contract and Common Counts*

Although not pled, the court effectively determined the plaintiff's action for breach of contract and common counts against Kim Seafood. Finding the plaintiff's witnesses entirely credible, the court finds a breach of contract and liability on a debt.

### B. *The Elements Necessary to Establish Non-dischargeability Based on a False Representation Are Satisfied*

 Section 523(a)(2)(A) provides that a discharge under § 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To establish that a debt is nondischargeable under § 523(a)(2)(A), the plaintiff must establish the following elements:

(1) that the debtor made the representations;

(2) that at the time she knew they were false;

(3) that she made them with the intention and purpose of deceiving the creditor;

(4) that the creditor justifiably relied on the representations; and

(5) that the creditor sustained alleged loss and damage as the proximate result of the representations.

*In re Diamond,* 285 F.3d 822, 827 (9th Cir.2002). Each of the requisite elements is satisfied in this case.

### 1. *The Representations of Anh Tran May Be Imputed to Kim Seafood*

 Sea Win alleges that by placing the orders, Tran represented that the obligation would be paid by Kim Seafood. As in credit card cases, the placement of an order contains an inherent representation of an intent to pay for the goods. *See In re Hashemi,* 104 F.3d 1122, 1125 (9th Cir. 1997), *cert. denied,* 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997); *In re Anastas,* 94 F.3d 1280, 1285 (9th Cir.1996). The evidence indicates that the representations were made by Anh Tran, the defendant's mother. For purposes of determining dischargeability, fraud may be imputed under general agency principles. *In re Tsurukawa,* 287 B.R. 515, 524–25 (9th Cir. BAP 2002). California law establishes that an employee may be an agent of the principal employer for purposes of legal relations with third persons. *See John Doe v. Capital Cities,* 50 Cal.App.4th 1038, 1047, 58 Cal.Rptr.2d 122 (2nd Dist.1996). It also provides that an agent acting within the scope of his authority binds his principal. *See* Cal. Civil Code § 2330 (West 2003).

As warehouse manager, Anh Tran was the employee of Kim Seafood responsible for purchasing and delivery for Kim Seafood. She was acting within the scope of her authority when she placed the various

orders with Sea Win. As a result, the representations of Anh Tran may be imputed to Kim Seafood, the principal.

### 2. *Tran Acted With Reckless Indifference to Whether the Representations Were False*

A promise made without a present intent to perform satisfies § 523(a)(2)(A). *In re Rubin,* 875 F.2d 755, 759 (9th Cir.1989); *In re Barrack,* 217 B.R. 598, 606 (9th Cir. BAP 1998). In addition, where the promisor knew or should have known of his prospective inability to perform, the promise can be found to be fraudulent. *Barrack,* 217 B.R. at 606. More to the point in this case, a statement made with reckless indifference to the truth is sufficient to satisfy the requirement of a fraudulent representation by the plaintiff. *In re Anastas,* 94 F.3d at 1286; *In re Ettell,* 188 F.3d 1141, 1145 fn. 4 (9th Cir. BAP 1999). Conduct performed with reckless indifference will suffice. *See, e.g., In re Arm,* 175 B.R. 349, 354 (9th Cir. BAP 1994)(issuance of surety bonds not sufficiently funded), *aff'd,* 87 F.3d 1046 (9th Cir.1996). If the debtor was recklessly indifferent to the acts of his agent, then the fraud may be attributable to the debtor-principal. *In re Walker,* 726 F.2d 452, 454 (8th Cir.1984). It is inferred that the principal should have known of the fraud. *Id.*

The facts in *Walker* are very similar to those in this proceeding. The debtor became ill and was hospitalized intermittently over a two year period. During that time, he relinquished control of his hardware business to his wife. Mrs. Walker assigned fabricated accounts receivable to the hardware store's bank, which advanced funds into the store's account. *Walker,* 726 F.2d at 453. On review, the Eighth Circuit held that liability for the wife's fraud could be imputed to the debtor-husband if he was recklessly indifferent to the acts of his agent. *Id.* at 454. However, it found the record insufficient to determine whether the debtor should have been aware of the fraud and remanded for further proceedings. On remand with respect to the element of knowledge, the bankruptcy court held the debt to be nondischargeable because the debtor retained access to the books and records of the business, the examination of which would have disclosed the wife's fraud. *See In re Walker,* 53 B.R. 174 (Bankr.W.D.Mo.1985).

No testimony was presented that Kim Seafood intended to pay the debt; Tran denies any debt. The court, instead, finds for the creditor that Kim Seafood incurred the obligation. Because she was distracted by her personal circumstances, Tran left her mother, the warehouse manager, without sufficient resources and ill-equipped to manage the business. The difficulties experienced during her pregnancy may explain Tran's absence from the business, but the truth is that there was no one "minding the store." Yet Kim Seafood continued to operate. Because she was not responsible for the administration of the company, Anh Tran had no basis to know whether the business could pay for the merchandise she ordered at the time she placed the orders. The evidence suggests that in Tran's absence, Anh Tran reverted to the procedures she used before her employment with her daughter's company, with the result that there were no controls in place. Tran's conduct demonstrates a reckless indifference as to whether Sea Win would receive payment for its merchandise.

### 3. *Intent to Deceive Is Demonstrated by the Circumstantial Evidence*

Fraud is generally brought to light by consideration of circumstantial evidence. *Ettell,* 188 F.3d at 1145. For pur-

poses of dischargeability, fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct. *Barrack,* 217 B.R. at 607. No one factor is determinative. Intent to defraud is inferred from the totality of the circumstances. *Anastas,* 94 F.3d at 1286 fn. 3; *In re Tallant,* 218 B.R. 58, 66 (9th Cir. BAP 1998). The court must balance the objective evidence against the witness's testimony and credibility. *Ettell,* 188 F.3d at 1145.

Kim Seafood incurred in excess of $78,000 in charges on the account over a period of less than thirty days. Tran's denial that the company ever received the deliveries at all is controverted by the testimony of credible witnesses. The court infers that either Tran or Anh Tran, as Kim Seafood's agent, was uninformed regarding Kim Seafood's ability to pay for merchandise but determined to stay in business at all costs. The totality of the circumstances supports a finding that the orders were placed with reckless indifference to the truth and to induce Sea Win to ship merchandise in reliance on the implied promise of payment.

### 4. Sea Win Justifiably Relied on the Representations

The standard for the reliance on a representation necessary to except a debt from discharge is not reasonable reliance, but the less demanding one of justifiable reliance. *Field v. Mans,* 516 U.S. 59, 61, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). This is a subjective standard in which the court considers the knowledge and relationship of the parties. *Tallant,* 218 B.R. at 67.

Sea Win followed its standard business practice of verifying a new customer's credit history by contacting other vendors. There were no defaults on the account at the time the shipments were made. Sea Win's reliance on Kim Seafood's representations is justifiable under these circumstances. However, in view of the newness of the relationship between the parties, Sea Win's reliance is justifiable only to the extent of its $15,000 credit limit.

### 5. Sea Win Was Damaged in the Amount of $15,000 as a Proximate Result of Its Reliance

Although the evidence indicates that Kim Seafood received and failed to pay for seafood product totaling at least $66,491.20, it was not reasonable for Sea Win to exceed the $15,000 credit limit it issued to Kim Seafood only weeks earlier.

Moreover, Tran's personal liability was limited to the amount of the credit limit that Sea Win extended to Kim Seafood. A guarantor is released from liability if the parties to the original contract or obligation vary its terms without its consent and attempt to make it liable for the performance of an obligation not contemplated by the contract. California Civil Code § 2819 (West 2003). *See also United States v. Reliance Ins. Co.,* 799 F.2d 1382, 1386 (9th Cir.1986); *GlenS Falls Indemnity Co. v. Basich Bros. Construction Co.,* 165 F.2d 649, 652 (9th Cir. 1948), *cert. denied,* 334 U.S. 833, 68 S.Ct. 1347, 92 L.Ed. 1760 (1948). There is no evidence in the record that Tran waived the limit to her personal guaranty or consented to personal liability for the debts of Kim Seafood in excess of the $15,000 credit limit.

### C. Under California Law, Sea Win is Entitled to Reasonable Attorneys' Fees Under the Credit Agreement and the Guaranty

Sea Win seeks an award of attorneys' fees in the amount of $24,626. No

general right to attorneys' fees exists under the Bankruptcy Code. *In re Baroff,* 105 F.3d 439, 441 (9th Cir.1997). The determinative question in dischargeability cases is whether the successful plaintiff could recover attorneys' fees in a non-bankruptcy court. *In re Pham,* 250 B.R. 93, 99 (9th Cir. BAP 2000).

■■■ California Civil Code § 1717 authorizes an award of attorneys' fees:

[i]n any action on a contract, where the contract specifically provides that attorneys' fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorneys' fees in addition to other costs.

California Civil Code § 1717 is narrowly applied and supports an award of attorneys' fees only if the action involves a breach of contract claim. *In re Davison,* 289 B.R. 716, 724 (9th Cir. BAP 2003); *Santisas v. Goodin,* 17 Cal.4th 599, 615, 71 Cal.Rptr.2d 830, 951 P.2d 399 (1998). A prevailing creditor in a dischargeability proceeding is entitled to contractual attorneys' fees under state law if the bankruptcy court adjudicates a contract action in connection with dischargeability. *Pham,* 250 B.R. at 96.

■■■ Here, the complaint asserted only nondischargeability claims, but the trial was conducted primarily as a breach of contract action. Unlike the debtors in *Davison* and *Pham,* Tran disputed liability under the credit agreement and the guaranty. Her position compelled Sea Win to put on evidence to establish both dischargeability and breach of contract. Once a case is tried, what was actually litigated takes precedence over the pleadings. *In re Yadidi,* 274 B.R. 843, 851–52

(9th Cir. BAP 2002); Fed.R.Civ.P. 15(b). In conformity with the evidence adduced at trial, this adversary proceeding included a claim for breach of contract. Civil Code § 1717 authorizes an award of attorneys' fee attributable to litigating this claim.

California law also permits recovery of attorneys' fee by agreement for tort claims such as a § 523 action. *Davison,* 289 B.R. at 724. California Code of Civil Procedure § 1021 provides an alternate basis for an award of attorneys' fees:

Except as attorneys' fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

The court looks to the language of the agreement between the parties to determine whether an award of attorneys' fees is permitted in a tort action. *Davison,* 289 B.R. at 724.

■■■ The attorneys' fees provision in the credit agreement provides, "In the event it becomes necessary for Sea Win, Inc. to incur collection costs or institute suit to collect any amount due under the agreement or any portion thereof, the undersigned promises to pay such additional collection costs, charges, expenses, and attorneys' fees." Courts are to interpret contract language in their ordinary and popular sense. *Exxess Electronixx v. Heger Realty Corp.,* 64 Cal.App.4th 698, 709, 75 Cal.Rptr.2d 376 (2nd Dist.1998). Here, the contractual attorneys' fees provision in the credit agreement authorizes Sea Win to recover its attorneys' fees for litigating a dischargeability claim to collect a debt. Because Sea Win is entitled under state law to attorneys' fees incurred in litigating

its dischargeability claim, it may recover them in this proceeding.

The court need not allocate attorneys' fees between the dischargeability claim and the breach of contract claim since Sea Win is contractually entitled to recover fees attributable to both. Sea Win, however, has not furnished to the court copies of counsel's time records for the services rendered in this proceeding, so the court cannot determine the reasonableness of the amount of fees requested. Sea Win is directed to notice for hearing its request for attorneys' fees, supported by copies of its counsel's time records.

### IV. CONCLUSION

Based on the foregoing, the court concludes that Tran owes $15,000 to Sea Win based on her personal guaranty and that the debt is nondischargeable pursuant to § 523(a)(2)(A). Because the debt to Sea Win is nondischargeable pursuant to § 523(a)(2)(A), the court need not consider Sea Win's alternative claims under §§ 523(a)(4) and (a)(6). Pursuant to the agreements and California law, Sea Win is also entitled to recover its reasonable attorneys' fees for litigating both the contract and the dischargeability claims. The court will determine the amount of attorneys' fees after a duly noticed hearing.

Good cause appearing, it is SO ORDERED.