**In re Dale W. DAVISON, Debtor.**

**Redwood Theaters, Inc., Appellant,**

v.

**Dale W. Davison, Appellee.**

**No. EC–02–1334–RYPB,
01–29692, 01–2363.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 21, 2002.

Opinion Filed Jan. 28, 2003.

Amended Opinion Filed Feb. 7, 2003.

Janina M. Elder, Santa Rosa, CA, for Redwood Theatres, Inc.

G. Michael Williams, Ganzer & Williams, Stockton, CA, for Dale W. Davison.

Before RYAN, PERRIS, and BRANDT, Bankruptcy Judges.

## AMENDED OPINION

RYAN, Bankruptcy Judge.

After Dale W. Davison ("Debtor") filed a

chapter 7[1] petition, Redwood Theatres, Inc. ("Redwood") filed a complaint (the "Complaint") to declare certain debts non-dischargeable under § 523(a)(2)(A). Debtor filed a motion for summary judgment (the "SJ Motion"), which the bankruptcy court denied.

After trial, the bankruptcy court granted judgment for Debtor. Debtor then filed a motion for an award of attorney's fees and costs (the "Motion"), which the bankruptcy court granted (the "Order"). Redwood timely appealed.

We REVERSE.

## I. FACTS

During 1983 to 2000, Debtor owned and operated various movie theaters.[2] In 1988, Debtor personally purchased from Redwood a six-screen motion picture theater (the "Theater") in Morgan Hill, California for $615,000.

Under the purchase agreement (the "Agreement"), Debtor paid Redwood $150,000 in cash and executed a $465,000 secured promissory note (the "Note") in favor of Redwood. Although the Agreement allowed Debtor to assign his rights in the Theater, he remained personally liable under the Agreement.[3] The Agreement also provided for attorney's fees in the event of a dispute between the parties. Paragraph 19 of the Agreement provided:

If any action at law or in equity, or any arbitration, is necessary to enforce or to interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and the necessary disbursements in addition to any other relief to which he may be entitled.

Agreement (Mar.1988), at 3.[4] Further, Paragraph 6 of the Note provided that "[Debtor] agrees to pay the costs of suit and reasonable attorneys' fees incurred in any action to enforce payment of this note or any part of it." Secured Promissory Note (Mar. 30, 1988), at 2.

Later, Debtor transferred the Theater to D & D Associates ("D & D"), a theater owner and operator in which Debtor was a 50% general partner with David Knopf. Undisputedly, Debtor did not advise Redwood at the time of the sale of his intention to transfer ownership of the Theater to D & D.

In 1990, Debtor sought a loan (the "Loan") from Financial Center Bank (the "Bank"). The Bank agreed to make the Loan to CinemaCal. As a result, Debtor transferred all his personal assets, including the Theater, to CinemaCal.[5] CinemaCal then pledged the Theater to the Bank as security for the Loan.

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Originally, Debtor owned and operated his theaters under the fictitious name of Cinema-Cal Enterprises and Stockton Cinemas, Inc. Debtor eventually changed the name of Stockton Cinemas, Inc. to CinemaCal Enterprises, Inc. ("CinemaCal").

3. Paragraph 17 of the Agreement provided that "[Debtor] will have the right to assign

this agreement or any interest herein, provided, however, that [Debtor] shall remain fully responsible for the performance of all the terms and conditions of this agreement." Agreement (Mar.1988), at 2.

4. It is unclear in the appellate record (the "Record") as to the exact date the parties entered into the Agreement.

5. Debtor was the sole shareholder of Cinema-Cal. In addition, CinemaCal was the operating partner of D & D, responsible for the day-to-day operations of D & D's several theaters, including the Theater.

In 1992, CinemaCal filed a chapter 11 petition. Redwood filed a secured claim for $430,260.21.

Under CinemaCal's confirmed plan, Redwood's security interest in the Theater was subordinated to the security interest of Pacific Concessions, Inc.[6] CinemaCal's plan provided for payment of Redwood. However, Debtor remained personally liable on the Note, and he made payments until 1999. CinemaCal went out of business in 1999.

In 2000, Debtor filed his chapter 7, and Redwood filed the Complaint, alleging a single claim for relief under § 523(a)(2)(A) for fraud based upon misrepresentations and omissions made by Debtor when he purchased the Theater. Redwood asserted that Debtor fraudulently concealed that it was actually D & D who purchased the Theater. According to Redwood, it relied on Debtor's representations that he would be personally liable on the Note and would retain ownership of the Theater.[7] As a result of Debtor's misrepresentations, Redwood claimed that it was damaged in excess of $200,000. Redwood also sought attorney's fees and costs.

Debtor answered the Complaint, denying all misrepresentations. He also raised affirmative defenses that Redwood's claim for relief was barred by the statute of limitations and that Redwood suffered no damage because it did not perfect its security interest in the Theater. Debtor also requested attorney's fees and costs.

Debtor filed the SJ Motion, arguing that the Complaint was barred by the statute of limitations. The bankruptcy court denied the SJ Motion without prejudice.

After trial, the bankruptcy court entered a judgment[8] for Debtor because it found no fraud on Debtor's part:

> ... I am not persuaded by a preponderance of the evidence that Mr. Davison had actually decided in his own mind that Mr. Knopf was going to be a participant in the theater at the time that Mr. Davison closed the transaction with Redwood Theatres. I am persuaded that there had been some discussions ....
>
> Thus I am not persuaded by a preponderance of the evidence that Mr. Davison's representation that he was the buyer was either false or that he knew the representation was false at the time he gave it. Nor am I persuaded by a preponderance of the evidence that in making the representation he intended to deceive Redwood. There is simply no indication in the overall structure of the transaction that Redwood would have refused to go forward with the transaction if it had known of Mr. Knopf, although I am persuaded that it would have asked that he be individually liable if that was the structure that was to be agreed upon.

Tr. of Proceedings (May 1, 2002), at 12–13.

Debtor then filed the Motion. Debtor requested $20,055 in attorney's fees based on the Agreement and the Note. Debtor also sought costs of $1,075.54. Citing California Civil Code ("CCC") § 1717, Debtor argued that the adversary proceeding was an action "on the contract." Alternatively, Debtor argued that even if the adversary

---

**6.** Pacific Concessions, Inc. eventually took over the Theater in 1999.

**7.** According to Redwood, Debtor misrepresented that he would be the sole owner of the Theater. Redwood indicated that if it had known about the intended transfer of partial ownership interest of the Theater to Knopf, it would have also required that Knopf be personally liable on the Note.

**8.** Redwood did not provide a copy of the judgment in the Record.

proceeding was a tort action, he was entitled to attorney's fees under CCC § 1717 based on the broad language of the Agreement.

Redwood responded that the adversary proceeding involved federal and not state issues. Therefore, attorney's fees under California law were not appropriate. Redwood also argued that because § 523(d) was not applicable to commercial debts, no attorney's fees could be awarded. Even if the bankruptcy court awarded attorney's fees under state law, Redwood argued that an allocation was required based on the state and federal issues.[9] Finally, Redwood asserted that the attorney's fees requested by Debtor were excessive.

Citing to *AT & T Universal Card Servs. Corp. v. Pham (In re Pham)*, 250 B.R. 93 (9th Cir. BAP 2000), the bankruptcy court granted the Motion because it found that the Agreement and the Note contained general attorney's fees provisions that were "broad enough to encompass a count under § 523(a)(2)(A)." Memorandum on Defendant's Motion for Award of Attorney's Fees and Costs (Jun. 13, 2002), at 3. Debtor relied on CCC § 1717 and California Code of Civil Procedure ("CCP") § 1021 as authority for awarding attorney's fees under California law.[10] It also found that the attorney's fees and costs were reasonable and that no allocation was necessary based on federal and state issues because "contractual liability for the underlying debt was conceded from the outset, 100 percent of the litigation effort is allocated to the defense of the § 523(a)(2)(A) count." Memorandum on

Defendant's Motion for Award of Attorney's Fees and Costs (Jun. 13, 2002), at 1.

Redwood then timely appealed.

## II. ISSUE

Whether the bankruptcy court abused its discretion in awarding attorney's fees.

## III. STANDARD OF REVIEW

■ We review the bankruptcy court's award of attorney's fees for an abuse of discretion or an erroneous application of the law. *See Pham*, 250 B.R. at 96 (citing *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir.1997)).

■ We review the bankruptcy court's decision to apply § 523(a)(2)(A) to an award of attorney's fees de novo. *See Pham*, 250 B.R. at 96 (citing *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 372 (9th Cir. BAP 1997)).

## IV. DISCUSSION

*The Bankruptcy Court Abused its Discretion in Awarding Attorney's Fees.*

The bankruptcy court relied on *Pham* and granted the Motion because the attorney's fee provisions in the Agreement and the Note were broad enough to encompass a § 523(a)(2) action. On appeal, Redwood contends that the bankruptcy court erred because *Pham* involved a limited issue of a creditor's right to attorney's fees under § 523(a)(2). Alternatively, Redwood contends that *Pham* inappropriately extended the holding in *Cohen v. de la Cruz*, 523

---

9. According to Redwood, the state issue involved a conflict between the language of the Agreement and a security agreement between Redwood and Debtor. Apparently, the security agreement limited Debtor's right to sell or transfer the Theater without the prior written consent of Redwood.

10. In the Motion, Debtor relied only on CCC § 1717 as authority for attorney's fees. However, during the hearing on the Motion, Debtor also moved for attorney's fees under CCP § 1021.

U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

In *Cohen*, the Supreme Court upheld the bankruptcy court's award of attorney's fees in a § 523(a)(2) [11] proceeding where the award was based on a state statute. *See Cohen*, 523 U.S. at 223, 118 S.Ct. 1212. There, the debtor-landlord charged his tenants rents in excess of a local ordinance. As a result, the local rent control administrator ordered the debtor to refund the rent overcharges. The debtor did not comply with the order and filed for a chapter 7. The tenants filed a complaint to determine the rent overcharges nondischargeable under § 523(a)(2)(A). They also sought treble damages and attorney's fees pursuant to the New Jersey Consumer Fraud Act.[12] The bankruptcy court held that the debts were nondischargeable under § 523(a)(2)(A) because the debtor committed actual fraud. The bankruptcy court also found that the debtor violated the New Jersey statute. As such, the bankruptcy court awarded the tenants treble damages and attorney's fees pursuant to the state statute. Both the district court and the court of appeals for the Third Circuit affirmed. *Id.* at 216, 118 S.Ct. 1212. The Supreme Court granted *certiorari*.

After considering the language and history of § 523(a)(2)(A), the Supreme Court held the attorney's fees nondischargeable, stating:

> [T]he text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt ... for money, property, services, or ... credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, **attorney's fees,** and other relief that may exceed the value obtained by the debtor.

*Cohen*, 523 U.S. at 223, 118 S.Ct. 1212 (emphasis added).

In other words, "[o]nce it is established that specific money or property has been obtained by fraud, ... 'any debt' arising therefrom is excepted from discharge." *Id.* at 218, 118 S.Ct. 1212. Because the attorney's fees awarded to the tenants were allowed under the New Jersey law, they were "debts" arising from the fraud and therefore nondischargeable. *Id.* at 223, 118 S.Ct. 1212.

**11.** Section 523 provides in pertinent part:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
. . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
. . . .
11 U.S.C. § 523(a)(2)(A).

**12.** The New Jersey Consumer Fraud Act provides, in relevant part:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
N.J. Stat. § 56:8–19 (2002).

Later, in *Pham,* the creditor filed a complaint to determine certain credit card debts nondischargeable under § 523(a)(2)(A) and requested attorney's fees under its cardmember agreements and CCC § 1717. The complaint alleged that the debtor obtained credit by actual fraud. The bankruptcy court granted a default judgment for the credit card debt, but denied the creditor's request for attorney's fees. *See Pham,* 250 B.R. at 94–95.

On appeal, we noted that after *Cohen,* attorney's fees are nondischargeable under § 523(a)(2) if they are recoverable "in a non-bankruptcy court." *Id.* at 99. If so, the attorney's fees are nondischargeable. We therefore remanded for the bankruptcy court to determine if the cardmember agreements supported an award of attorney's fees in a fraud action under California law. *Id.* at 99.

### 1. *California Civil Code § 1717*

■ Under California law, CCC § 1717 authorizes attorney's fees:

> [i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

CAL. CIVIL CODE § 1717(a). Therefore, CCC § 1717 provides for attorney's fees in an "action on a contract." *Id.*

The Ninth Circuit, in *Baroff,* held that "California courts liberally construe 'on a contract' to extend to any action '[a]s long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit ....'" *Baroff,*

105 F.3d at 442–43 (citing *Milman v. Shukhat,* 22 Cal.App.4th 538, 545, 27 Cal. Rptr.2d 526 (1994)).

In *Baroff,* the creditors filed a nondischargeability action against the debtor, a former business partner, contending that the debtor had fraudulently induced them to enter into a settlement agreement. Additionally, the creditors argued that the debtor committed fraud while acting in a fiduciary capacity. The bankruptcy court granted summary judgment to the debtor under both theories of liability because it found that the settlement agreement was an integrated document under California law and therefore the creditors were precluded from introducing extrinsic evidence to establish their claims. *See Baroff,* 105 F.3d at 440–41.

The debtor then requested attorney's fees, asserting that the court should apply California law to enforce the attorney's fees provision in the settlement agreement. *Id.* at 441. The bankruptcy court denied the request for fees, and the district court affirmed.

On appeal, the Ninth Circuit recognized that "[n]o general right to attorney fees exists under the Bankruptcy Code." *Id.* "However, a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Id.* (citing *Johnson v. Righetti (In re Johnson),* 756 F.2d 738, 741 (9th Cir.1985)). With respect to an action on a contract, the *Baroff* court noted that "[b]ecause state law necessarily controls an action on a contract, a party to such an action is entitled to an award of fees if the contract provides for an award and state law authorizes fee shifting agreements." *Id.* (citing *Johnson,* 756 F.2d at 741).

Because the bankruptcy court had to determine the enforceability of the settlement agreement, the *Baroff* court held that "the document containing the attorney [sic] fees clause in this case played an integral role in the proceedings." *Id.* at 442. As a result, the court concluded that the action was on the contract and that California law applied in awarding attorney's fees. *Id.*

Specifically, the *Baroff* court recognized that "[u]nder California law, a tort action for fraud arising out of a contract is not an action on a contract within the meaning of [CCC] Section 1717." *Id.* at 443 (citation omitted). However, the *Baroff* court held that an action to rescind a fraudulently induced agreement is an "action on a contract" within the meaning of CCC § 1717. Therefore, the *Baroff* court held that the debtor was entitled to attorney's fees pertaining to the fraudulent inducement count. On the other hand, the fiduciary capacity count was a tort action and did not entitle the debtor to recover attorney's fees. *Id.*

Similarly, in *American Express Travel Related Servs. Co. Inc. v. Hashemi (In re Hashemi)*, 104 F.3d 1122 (9th Cir.1996), the Ninth Circuit held that if the bankruptcy court did not need to determine whether the contract was enforceable, then the dischargeability claim is not an action on the contract within the meaning of CCC § 1717. *Id.* at 1126.

Subsequent to *Baroff* and *Hashemi,* the California Supreme Court held in *Santisas v. Goodin,* 17 Cal.4th 599, 71 Cal.Rptr.2d 830, 951 P.2d 399 (1998), that CCC § 1717 applies only to attorney's fees incurred in actions involving a contract claim. *Id.* at 615, 71 Cal.Rptr.2d 830, 951 P.2d 399.

In *Santisas,* the buyers brought an action against the seller's broker for breach of contract and negligent misrepresentation. Based on an attorney's fees provision in a purchase agreement [13] between the parties, the buyers sought attorney's fees in their complaint. The buyers voluntarily dismissed their case prior to trial. The sellers then moved to recover their attorney's fees as costs under CCP §§ 1021, 1032,[14] 1033.5 [15] and the attorney's fees provision in the purchase agreement. The buyers opposed, arguing that recovery of attorney's fees after a voluntary dismissal is barred under CCC § 1717. The superior court awarded the sellers their attorney's fees, and the Court of Appeal affirmed. *See Santisas,* 17 Cal.4th at 603–04, 71 Cal.Rptr.2d 830, 951 P.2d 399.

On appeal, the California Supreme Court adopted a narrow view of CCC § 1717 and held that "[CCC] section 1717 applies only to actions that contain at least one contract claim. If an action asserts both contract and tort or other noncontract claims, [CCC] section 1717 applies only to attorney fees incurred to litigate the contract claims." *Santisas,* 17 Cal.4th at 615, 71 Cal.Rptr.2d 830, 951 P.2d 399

---

13. The attorney's fees provision stated: "In the event legal action is instituted by the Broker(s), or any party to this agreement, or arising out of the execution of this agreement or the sale, or to collect commissions, the prevailing party shall be entitled to receive from the other party a reasonable attorney fee to be determined by the court in which such action is brought." *Santisas,* 17 Cal.4th at 603, 71 Cal.Rptr.2d 830, 951 P.2d 399.

14. CCP § 1032(b) provides that "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Cal. Civ. Proc. Code § 1032(b).

15. CCP § 1033.5 provides that attorney fees are "allowable as costs" under CCP § 1032 when they are authorized by either contract, statute or law. *See* Cal. Civ. Proc. Code § 1033.5(a)(10).

(citations omitted). In other words, only a contract claim is an "action on a contract" within the meaning of CCC § 1717. *Id.*

After concluding that the buyers' complaint included a claim for breach of contract, the *Santisas* court denied the sellers their request for attorney's fees incurred in their defense of the breach of contract claim because they were not "prevailing parties" within the meaning of CCC § 1717.[16] *Id.* at 617, 71 Cal.Rptr.2d 830, 951 P.2d 399.

■ Because *Santisas* was decided after *Baroff,* we will follow its holding and narrowly apply CCC § 1717 and approve attorney's fees only if the action involves a contract claim. *See Santisas,* 17 Cal.4th at 615, 71 Cal.Rptr.2d 830, 951 P.2d 399.

Here, the Complaint did not contain a breach of contract claim. Rather, the only claim asserted was a nondischargeability claim based on fraud. Therefore, CCP § 1717 is not applicable. *See Santisas,* 17 Cal.4th at 615, 71 Cal.Rptr.2d 830, 951 P.2d 399.

### 2. *California Code of Civil Procedure § 1021*

Alternatively, CCP § 1021 also allows recovery of attorney's fees:

> Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are

entitled to their costs, as hereinafter provided.

CAL. CIV. PROC. CODE § 1021.

■ CCP § 1021 does not limit the recovery of attorney's fees to certain claims. *See 3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.,* 990 F.2d 487, 489 (9th Cir. 1993). The Ninth Circuit noted that attorney's fees may be recoverable under CCP § 1021 even though they are not recoverable under CCC § 1717. Therefore, it held that "California law permits recovery of attorney's fees by agreement, for tort as well as contract actions." *Id.; Accord, Santisas,* 17 Cal.4th at 622, 71 Cal.Rptr.2d 830, 951 P.2d 399.

■ If there is an attorney's fees provision in an agreement between the parties, we look to the language of the agreement to determine whether an award of attorney's fees is warranted in a tort action. *See 3250 Wilshire Boulevard Bldg.,* 990 F.2d at 489; *Klause v. Thompson (In re Klause),* 181 B.R. 487, 500 (Bankr.C.D.Cal. 1995).

Here, both the Agreement and the Note contained an attorney's fees provision. Therefore, we will discuss both.

#### a. *The Agreement*

■ Paragraph 19 of the Agreement provided the parties with attorney's fees:

> If any action at law or in equity, or any arbitration, is necessary to enforce or to interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs, and the

---

**16.** Nonetheless, the sellers were entitled to recover attorney's fees expended in defending the tort claims as costs under CCP §§ 1032 and 1033.5(a)(10). According to the *Santisas* court, a broadly phrased attorney's fees provision may support an award of attorney's fees in both contract and tort actions. The court reasoned that the " '[P]arties may validly agree that the prevailing party will be award-

ed attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' " *See Santisas,* 17 Cal.4th at 608, 71 Cal.Rptr.2d 830, 951 P.2d 399 (quoting *Xuereb v. Marcus & Millichap, Inc.,* 3 Cal.App.4th 1338, 1341, 5 Cal. Rptr.2d 154 (1992)). Redwood did not argue here that attorney's fees should be allowed under these statutory provisions.

necessary disbursements in addition to any other relief to which he may be entitled.

Agreement (Mar.1988), at 3.

In *Klause,* the buyers of an apartment building brought a §§ 523(a)(2) and (a)(6) action against the seller after discovering that the seller had misrepresented the condition of the building. After obtaining a judgment, the buyers sought attorney's fees. The purchase agreement provided that " '[i]f a lawsuit or other proceeding is instituted to enforce the rights under this Agreement ... the prevailing party shall be entitled to recover court costs and reasonable attorney's fees.' " *Klause,* 181 B.R. at 500.

The bankruptcy court rejected attorney's fees under CCC § 1717 because the claim did not involve a contract action. Turning to CCP § 1021 and referring to the purchase agreement, the court noted that "fees will be awarded if the suit is instituted to *enforce the rights under the agreement.*" *Id.* at 501 (emphasis in original). According to the *Klause* court, the words "to enforce" have a limited meaning. In other words, the § 523(a)(2) action brought by the buyers must be used to "enforce" their rights under the agreement. Because one of the provisions in the purchase agreement required the seller to provide a current rental statement and copies of all leases, the bankruptcy court found that the buyers had a right to receive true documents. In effect, the suit was an action to "enforce" this right, and the bankruptcy court awarded attorney's fees. *Id.* at 501.

Here, the Agreement allowed attorney's fees to the prevailing party in "any action at law or in equity" if it was "to enforce or to interpret" the terms of the Agreement. *See* Agreement (Mar.1988), at 3. As stated above, the Complaint involved a § 523(a)(2)(A) action for fraud. Red-

wood's theory was that Debtor misrepresented that he was the sole buyer of the Theater when in fact he intended to transfer an interest to Mr. Knopf. Redwood did not allege any breach of the Agreement or seek to enforce any rights under the Agreement. Redwood also did not allege that the Agreement included any term requiring the identification of any prospective assignee of an interest in the Theater. To the contrary, the Agreement specifically permitted an assignment of Debtor's rights in the Theater. Therefore, in finding no fraud by Debtor, the bankruptcy court was not enforcing or interpreting the terms of the Agreement. Accordingly, under CCP § 1021, Debtor was not entitled to attorney's fees under the Agreement even though he was the prevailing party.

b. *The Note*

██ Paragraph 6 of the Note provides that the "Maker agrees to pay the costs of suit and reasonable attorney's fees incurred in any action to enforce payment of this note or any part of it." Secured Promissory Note (March 30, 1988), at 2. "Maker" is defined in the Note as "DALE DAVISON, an individual dba CinemaCal Enterprises." *Id.* at 1.

Therefore, under the Note, the parties agreed that only Redwood has the right to attorney's fees. Debtor has no such right. As a result, under CCP § 1021, Debtor was not entitled to attorney's fees under the Note.

V. CONCLUSION

In sum, Debtor was not entitled to attorney's fees under either CCC § 1717 or CCP § 1021. Therefore, the bankruptcy court abused its discretion in awarding

attorney's fees.[17]

REVERSED.

---

**17.** This holding is not applicable to the bankruptcy court's award of costs to Debtor in the amount of $1,075.74. We note that Redwood did not object to such an award on appeal. As such, he waived this issue. *See Brooks v. City of San Mateo,* 229 F.3d 917, 922 n. 1 (9th Cir.2000) (stating that arguments not raised in a party's opening brief are deemed waived).

In addition, because we reverse the bankruptcy court, we need not decide the issue of whether the bankruptcy court erred in not allocating the attorney's fees between the state and federal issues.