FILED

JUL 3 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    CC-18-1326-FLKu |
| DARIN DAVIS, | Bk. No.    1:10-bk-17214-VK |
| Debtor. | Adv. Pro.  1:10-ap-01354-VK |
| ASPHALT PROFESSIONALS, INC., | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| DARIN DAVIS, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Pasadena, California

Filed – July 3, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

---

Appearances: Ray B. Bowen, Jr. of Law Offices of Ray B. Bowen, Jr. argued for appellant Asphalt Professionals, Inc.; Alan Wayne Forsley of Fredman Lieberman Pearl LLP argued for appellee Darin Davis.

---

Before: FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

In the parties' previous appearance before the Bankruptcy Appellate Panel ("BAP"), we affirmed the bankruptcy court's judgment in favor of chapter 7[1] debtor Darin Davis on creditor Asphalt Professionals, Inc.'s ("API") nondischargeability claim and objection to discharge. API appeals again, this time from the bankruptcy court's award of attorneys' fees and costs to Mr. Davis. It argues that Mr. Davis was not a party to the underlying contract, so he cannot enforce the contract's attorneys' fees provision against API. It also argues that some of the allowed fees and costs were unreasonable and unrelated to the underlying dispute.

The bankruptcy court did not err in holding that California law allows recovery under the contract. It also did not err in calculating fees

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are the Federal Rules of Civil Procedure.

and costs owed to Mr. Davis. We AFFIRM.

## FACTUAL BACKGROUND[2]

### A.  The underlying contract dispute

Mr. Davis was a developer of small real estate projects through various limited liability companies. He and a partner formed T.O. IX, LLC ("T.O.") to develop the "Whitman Project" in Thousand Oaks, California.

API is a general engineering contractor that builds roads, streets, and sidewalks. API entered into a construction subcontract agreement ("Subcontract") for work on the Whitman Project. The Subcontract repeatedly referred to, but never identified, the "Contractor." The Subcontract identified T.O. as the "Owner" of the Whitman Project and a third-party beneficiary with "the right to enforce the provisions of this Agreement against Subcontractor."

Paragraph 23 of the Subcontract provided:

In the event that Contractor prevails in any reference proceeding or court action arising out of this Agreement or the enforcement or breach thereof, or in any action brought against Subcontractor by third parties in which Contractor is joined as a party or interpleads, whether the same proceeds to judgment or not, Subcontractor agrees to pay Contractor reasonable

---

[2] We borrow heavily from our earlier decision in this matter, *Asphalt Professionals, Inc. v. Davis (In re Davis)*, BAP Nos. CC-18-1158-FKuTa, CC-18-1163-FKuTa, 2019 WL 406680 (9th Cir. BAP Jan. 31, 2019). We also exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

attorneys' fees. In the event that Subcontractor prevails . . . , Contractor agrees to pay Subcontractor reasonable attorneys' fees. The parties' covenants set forth in this Paragraph 23 shall survive and be enforceable following termination of this Agreement.

API was responsible for altering a median on a public roadway. It stopped work when it discovered a problem with the site plans. API refused to resume work until another of Mr. Davis' entities, D&S Homes, Inc., updated the site plan or paid API to do so.

In April 2005, D&S Homes told API that it had violated the terms of the Subcontract and terminated the agreement. T.O. back-charged API $80,000 for the cost of another subcontractor to complete the work.

In September 2005, API sued T.O., Mr. Davis, and others in state court (the "State Court Action") for breach of contract, fraud, and other claims. It alleged throughout the State Court Action that T.O. was the alter ego of Mr. Davis. API also alleged that it "entered into a written contract with defendants T.O., D and S, D & S Development, [Mr. Davis]," and others.

In July 2007, the state license board cited T.O. for lack of a contractor's license.

## B.    Mr. Davis' bankruptcy case

In June 2010, before API's claims went to trial in the State Court Action, Mr. Davis filed a chapter 7 petition. API filed a timely adversary

complaint seeking a denial of Mr. Davis' discharge under §§ 727(a)(2)(A), (a)(2)(B), and (a)(4), and a determination that the debt was nondischargeable under § 523(a)(2)(A).

Throughout the adversary proceeding, API alleged that Mr. Davis was a party to the Subcontract and requested attorneys' fees that it incurred during the course of the adversary proceeding. It alleged in its complaint and joint pretrial stipulations that Mr. Davis "knowingly entered into a subcontract agreement with [API] . . ." and that T.O. was his alter ego. It also sought "the costs of this proceeding and the attorney's fees incurred by plaintiff in this proceeding[.]"

In September 2010, the bankruptcy court granted API relief from the automatic stay to allow it to litigate its claims in the State Court Action and potentially establish a basis for issue preclusion in the adversary proceeding.

## C.    The state court trials and appeals

The state court trifurcated the State Court Action into Phase One (breach of contract, foreclosure on a mechanic's lien, and quantum meruit), Phase Two (alter ego), and Phase Three (fraud and punitive damages). The state court held a bench trial as to Phase One and entered a judgment in favor of API in October 2010. The state court awarded API $318,000 in damages and $1.65 million in attorneys' fees. T.O. appealed the award of fees, but the court of appeal affirmed.

The state court next tried the alter ego issues in Phase Two. In December 2011, the state court ruled that T.O. "failed to disclose to [API] the entities that were actually involved in the [Subcontract]" and that it was not a licensed contractor. It also found that T.O., D&S Homes, and others were alter egos of Mr. Davis and were jointly and severally liable to API such that they were liable for attorneys' fees and "any other or future orders or orders awarding damages, punitive damages, attorneys fees and/or costs to [API] against T.O. IX, LLC . . . ."

The state court entered judgment in favor of API. Mr. Davis and T.O. appealed the judgment, but the court of appeal affirmed in all relevant respects.

In 2013, API filed an acknowledgment that the $1.9 million Phase One judgment had been satisfied in full.

D.    **The bankruptcy court decision**

In January 2011, API filed a proof of claim totaling $3 million. The bankruptcy court disallowed the $1.9 million that had been paid on the Phase One judgment but allowed the remaining $1.1 million pending the outcome of Phase Three in the State Court Action.

In December 2014, the court held a trial on API's § 727(a) claims. The bankruptcy court entered judgment in favor of Mr. Davis on all claims.

The bankruptcy court later held a trial on API's § 523(a) claims. It again ruled in Mr. Davis' favor, concluding that API had failed to establish

6

any element of the § 523(a)(2)(A) claim. The bankruptcy court entered a judgment in favor of Mr. Davis.

API appealed the two judgments to the BAP, and we affirmed on January 31, 2019. We agreed with the bankruptcy court's determination that API had failed to establish the mental state required by §§ 727(a)(2), (a)(4), and 523(a)(2). We also held that the court did not err in considering the trial evidence and applying issue preclusion.

**E.     The motion for attorneys' fees and costs**

Meanwhile, Mr. Davis had filed a motion for fees and costs ("Fee Motion") in the bankruptcy court. He sought a total of $153,913.89 in fees and costs that he had incurred defending against the adversary proceeding.

Mr. Davis argued that California state law allows for the recovery of attorneys' fees provided by contract. He contended that California Civil Code ("CCC") section 1717 allows a party or nonparty to recover attorneys' fees incurred in the litigation of a contract claim and that API's complaint against him was based on a contract. He also argued that his fees were recoverable under California Code of Civil Procedure ("CCCP") section 1021, which permits recovery of fees pursuant to an agreement of the parties.

The Fee Motion included the declaration of Mr. Davis' attorney, Alan W. Forsley, which attached Mr. Forsley's billing records. Mr. Forsley's hourly billing rate began at $350 in April 2011, but increased to $425 by

August 2017.

API opposed the Fee Motion, arguing that API prevailed in the State Court Action, so Mr. Davis could not claim that he was the prevailing party under the Subcontract; as such, the state statutes awarding fees to the prevailing party in a contract dispute were inapplicable. It also contended that Mr. Davis could not recover attorneys' fees because Mr. Forsley's time records were inadequate.

The court issued a tentative ruling indicating that it was inclined to grant the Fee Motion in part. It held a hearing on the Fee Motion but continued it to allow for further briefing on issues that API raised for the first time at the hearing.

In its supplemental brief, API argued that Mr. Davis was not a party to the Subcontract and that he could not enforce T.O.'s rights. It argued that it had not taken the position that Mr. Davis was a party to the Subcontract, so judicial estoppel was inapplicable. It also contended that California Business & Professions Code ("B&P") § 7031 barred Mr. Davis from recovering attorneys' fees under the Subcontract because T.O. was an unlicensed contractor.

In his supplemental response, Mr. Davis pointed out the many times that API alleged in the state court that Mr. Davis was a party to the Subcontract or could be held liable under the alter ego doctrine.

After a continued hearing, the bankruptcy court granted the Fee

8

Motion. It held that the state superior court and court of appeal had implicitly found that Mr. Davis was a party to the Subcontract when they determined that Mr. Davis was liable for attorneys' fees because T.O. was his alter ego.

The court next extensively examined California law and held that state law allows nonsignatory parties to recover attorneys' fees if the opposing party would have been able to recover fees from the nonsignatory party under the same provision, had it prevailed. It held that CCC section 1717(a) was not applicable to the present case because a nondischargeability action under § 523(a)(2)(A) is not an "action on a contract."

However, the court held that Mr. Davis could recover his attorneys' fees pursuant to CCCP sections 1021 and 1032 and the attorneys' fees provision in the Subcontract. It held:

> API explicitly contracted for reciprocity as to liability for attorneys' fees. Had [API] prevailed on its nondischargeability claim, because of the Alter Ego Judgment, [API] would have been able to collect its award of attorneys' fees from [Mr. Davis]. In fact, in the Adversary Complaint, [API] requested an award of attorneys' fees; for a nondischargeability claim under § 523(a)(2)(A), [API's] bases to obtain an award of attorneys' fees are the Agreement's attorneys' fees provision **and** the Alter Ego Judgment. Based on the authorities above, as a prevailing party, [Mr. Davis] may receive an award of attorneys' fees under the Agreement.

9

The bankruptcy court noted that the Subcontract allowed T.O. to enforce any provision of the Subcontract, including the attorneys' fees provision. Thus, API "agreed that T.O. would have the right to enforce any provision of the Agreement[,]" and Mr. Davis, as T.O.'s alter ego, also had the right to enforce the Subcontract. The court noted that API already recovered breach of contract damages, including attorneys' fees, in the State Court Action and that it would be inequitable to bar Mr. Davis from similarly recovering under the same provision of the Subcontract. The court limited recovery to the § 523(a) claim, because the claim for the denial of discharge under § 727 did not arise from the Subcontract.

Moreover, it rejected API's argument that Mr. Davis was not the prevailing party because API had prevailed in the State Court Action. It said that the "nondischargeability action is separate and distinct from the state court action. . . . In this action, [Mr. Davis] is the prevailing party because [Mr. Davis] 'falls squarely' within one of the 'prevailing party' definitions under CCP § 1032(a)(4): [he] is 'a defendant as against those plaintiffs who do not recover any relief against that defendant.'"

The bankruptcy court further held that API was judicially estopped from taking the position that Mr. Davis was not a party to the Subcontract because it had previously argued successfully that Mr. Davis was a party to the Subcontract and that T.O. was his alter ego.

Finally, the bankruptcy court held that B&P section 7031 did not bar

10

Mr. Davis from recovering attorneys' fees, inasmuch as that statute only applies to a business trying to recover compensation for work that it performed as a contractor.

Regarding the amount of fees, the bankruptcy court found that Mr. Forsley's hourly rate was reasonable for an attorney in Los Angeles with Mr. Forsley's experience. The court did not take issue with an increase in Mr. Forsley's billing rate during the course of the litigation. It ordered Mr. Forsley to submit a supplemental itemized statement of attorneys' fees and costs and allowed API the opportunity to respond. It directed Mr. Forsley not to include fees for the § 727 matter and to explain time entries that were lumped together or redacted.

## F.    The itemized fees and costs

Mr. Forsley submitted a supplemental declaration explaining his requested fees. He stated that his firm's billings for all of Mr. Davis' matters exceeded $200,000. To comply with the bankruptcy court's order that the request for fees include only time entries related to the § 523(a)(2)(A) claim, Mr. Forsley stated that he "blacked out and deducted all other fees on the bills so that they would not be included." He continued, "Nevertheless, some § 523(a)(2)(A) and § 727(a) claims are so intertwined that they could not be separated. . . . In such instances, the § 727 claims could not be apportioned so they were included in the billings." He stated that, after the deductions, his fees totaled $129,065.37,

11

and his costs totaled $1,501.74.

API argued that the Fee Motion sought to recover fees that Mr. Forsley had performed for other clients on unrelated matters, overstated Mr. Forsley's billing rate, and included billing entries that were unreasonable or for menial tasks.

API speculated that a third party might have been paying Mr. Forsley's fees, so it would be improper to award attorneys' fees to "a non-debtor, most likely to a creditor" by allowing recovery for work done "for client." The court responded that it did not matter who was paying the bill, only that Mr. Forsley was doing work on behalf of Mr. Davis.

API further argued that it would be improper to award fees on redacted billing entries and questioned the court's arithmetic. The court responded that it "did not award any fees on redacted entries."

The bankruptcy court awarded Mr. Davis $91,390.92 in fees and $956.87 in costs. It noted that Mr. Forsley attempted to reduce his fee by deducting amounts billed in connection with the § 727 claim, as Mr. Davis' recovery was based only on the § 523(a) claim. It further reduced the award by subtracting any redacted items, items lumped together with the State Court Action, items concerning different clients, litigation against the chapter 7 trustee, litigation of unrelated matters, and items lumped together with disallowed tasks.

The court issued its order granting in part the Fee Motion on

December 3, 2018. API timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred by awarding Mr. Davis attorneys' fees and costs under the Subcontract.

(2) Whether the award of attorneys' fees and costs was reasonable.

## STANDARDS OF REVIEW

"To the extent the issue is whether California law allows the award of attorneys' fees, our review is de novo." *Saccheri v. St. Lawrence Valley Dairy (In re Saccheri)*, BAP No. EC-12-1269-JuKiD, 2012 WL 5359512, at *5 (9th Cir. BAP Nov. 1, 2012), *aff'd*, 599 F. App'x 687 (9th Cir. 2015) (citing *Fry v. Dinan (In re Dinan)*, 448 B.R. 775, 783 (9th Cir. BAP 2011)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We review the bankruptcy court's decision regarding an award of fees and costs for an abuse of discretion. *Hosseini v. Key Bank, N.A. (In re Hosseini)*, 504 B.R. 558, 563 (9th Cir. BAP 2014) (citing *Renfrow v. Draper*, 232 F.3d 688, 693 (9th Cir. 2000); *In re Dinan*, 448 B.R. at 783).

We apply a two-part test to determine whether the bankruptcy court

abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. *Id.* Then, we review the bankruptcy court's factual findings for clear error. *Id.* at 1262. We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

## DISCUSSION

**A.  The bankruptcy court did not err in awarding Mr. Davis his attorneys' fees and costs pursuant to the Subcontract.**

API argues that the bankruptcy court impermissibly allowed Mr. Davis to recover attorneys' fees under a contract to which he was not a party. We discern no error.

### 1.  California law allows for recovery under the Subcontract.

API argues that the bankruptcy court erred when it ruled that CCC section 1717(a) was inapplicable yet relied on three cases that construed that same section.[3] We disagree.

Section 1717(a) concerns the award of attorneys' fees "[i]n any action

---

[3] California law applies because "[n]o general right to recover attorney's fees exists under the Bankruptcy Code." *In re Hosseini*, 504 B.R. at 568 (citation omitted). Merely prevailing on a § 523(a) claim, in and of itself, does not entitle a party to attorneys' fees. *Id.* Thus, the party seeking fees must demonstrate some independent basis for the fee request. *Id.* at 567 ("a prevailing party may not recover attorney's fees except as provided for by contract or by statute").

on a contract . . . ."[4] This section is not limited solely to breach of contract claims. "California courts liberally construe the term 'on a contract' as used within section 1717. As long as the action 'involve[s]' a contract it is 'on [the] contract' within the meaning of Section 1717." *Dell Merk, Inc. v. Franzia*, 132 Cal. App. 4th 443, 455 (2005) (citations and some quotation marks omitted).

However, we have held that section 1717(a) is inapplicable to § 523(a) nondischargeability claims for fraud that do not involve a breach of contract claim: "we will . . . narrowly apply CCC § 1717 and approve attorney's fees only if the action involves a contract claim. . . . Here, the Complaint did not contain a breach of contract claim. Rather, the only claim asserted was a nondischargeability claim based on fraud. Therefore, CCP [sic] § 1717 is not applicable." *Redwood Theaters, Inc. v. Davison (In re Davison)*, 289 B.R. 716, 724 (9th Cir. BAP 2003) (citations omitted) (construing California law); *see Terra Nova Indus., Inc. v. Chen (In re Chen)*,

---

[4] CCC section 1717(a) provides, in relevant part:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

345 B.R. 197, 201 (N.D. Cal. 2006) (holding that the bankruptcy court did not err in declining to award fees under CCC section 1717 because "the bankruptcy court did not make any determination as to the contract claim, nor did it rely on the contract in its ruling on the dischargeability claim"); *Taburaza v. Zarate (In re Zarate)*, 567 B.R. 176, 185 (Bankr. N.D. Cal. 2017) (holding that a § 523(a)(2)(A) claim was not an action "on a contract" under CCC section 1717(a) because the bankruptcy court did not need to determine whether the contract was enforceable).

The bankruptcy court correctly determined that this provision did not apply. API's initial complaint in the bankruptcy court included claims for breach of the Subcontract, as well as §§ 523 and 727 claims. If the bankruptcy court had entered judgment on the contract claims, the court might have awarded fees under CCC section 1717. Instead, however, the bankruptcy court lifted the automatic stay so that the state court could adjudicate the contract claims. The claims that remained in the bankruptcy court – the §§ 523 and 727 claims – were not an "action on a contract." No one disputes this decision, and we agree with the bankruptcy court.

Nevertheless, the bankruptcy court cited three cases, *Dell Merk, Inc.*, 132 Cal. App. 4th 443, *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124 (1979), and *Burkhalter Kessler Clement & George LLP v. Hamilton*, 19 Cal. App. 5th 38 (Ct. App. 2018), that construe CCC section 1717(a). Those cases stand for the general proposition that, if a plaintiff sues a nonsignatory on a contract

as if the nonsignatory were a contracting party, he becomes liable for fees under CCC section 1717(a) if the nonsignatory prevails. *See Dell Merk, Inc.*, 132 Cal. App. 4th at 451 ("[I]n cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases: A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed."); *Reynolds Metals Co.*, 25 Cal. 3d at 129 ("Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation, defendants would have been liable on the notes. Since they would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed.); *Burkhalter Kessler Clement & George LLP*, 19 Cal. App. 5th at 46 ("even though Hamilton was not a party to the contract, she is entitled to recover her attorney fees under section 1717, because Burkhalter would have been entitled to recover its attorney fees against Hamilton had it prevailed on its alleged alter ego theory of liability").

But CCC section 1717(a) is not the only statutory basis for the recovery of attorneys' fees in California:

> California Code of Civil Procedure **section 1021 provides that, except where specifically provided by statute, parties are free to enter their own agreements regarding payment of fees**. Similarly, **a prevailing party may ordinarily recover "costs,"**

§§ 1021 and 1032(b), **and parties may contractually designate fees as recoverable costs**, § 1033.5(a)(10). Pursuant to these provisions, "**[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract**." *Santisas v. Goodin*, 17 Cal. 4th 599, 608, 71 Cal. Rptr. 2d 830, 951 P.2d 399 (1998) (quoting *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341, 5 Cal. Rptr. 2d 154 (1992)).

*MRW, Inc. v. Big-O Tires, LLC*, 684 F. Supp. 2d 1197, 1201 (E.D. Cal. 2010) (emphases added).

CCCP section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." Cal. Civ. Proc. Code § 1021. CCCP section 1021 is broader in some respects than CCC section 1717(a):

CCP § 1021 does not limit the recovery of attorney's fees to certain claims. The Ninth Circuit noted that attorney's fees may be recoverable under CCP § 1021 even though they are not recoverable under CCC § 1717. Therefore, it held that "California law permits recovery of attorney's fees by agreement, for tort as well as contract actions."

*In re Davison*, 289 B.R. at 724 (citing and quoting *3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993)). In particular, CCCP section 1021 permits recovery of attorneys' fees in §§ 523 and 727

18

cases. *See Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 391 (9th Cir. BAP 2011) (applying CCCP section 1021 to an attorneys' fee request in a § 727 action).[5]

The bankruptcy court also relied on CCCP section 1032(b), which provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Cal. Civ. Proc. Code § 1032(b). "Costs" include "Attorney's fees, when authorized by . . . Contract." Cal Civ. Proc. Code § 1033.5(a)(10).

Neither CCCP section 1021 nor CCCP section 1032 provides that a nonsignatory to a contract can recover attorneys' fees. Nevertheless, we agree with the bankruptcy court's conclusion that nonsignatories may recover attorneys' fees under CCCP sections 1021 and 1032 just as they can under CCC section 1717. When an action is "on a contract," CCC section 1717 permits recovery of attorneys' fees by a nonsignatory. CCCP section 1021 speaks of "the agreement . . . of the parties" and CCCP section 1032 allows for the prevailing party to "recover costs" "when authorized by . . .

---

[5] API argues that CCCP section 1021 "only applies to 'costs' and not 'attorney's fees[.]'" But the plain language of the statute mentions attorneys' fees and leaves them to the "agreement, express or implied, of the parties[.]" *See 3250 Wilshire Blvd. Bldg.*, 990 F.2d at 489 ("where attorney's fees are not recoverable for a non-contract action under section 1717, they may nonetheless be recoverable under section 1021"); *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341 (1992) ("It is quite clear from the case law interpreting Code of Civil Procedure section 1021 that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.").

Contract." We see no reason why the principle of reciprocal recovery applies to CCC section 1717 but not to CCCP sections 1021 and 1032.

At oral argument, the Panel asked counsel for API if there are any cases instructing that the reciprocity principle in CCC section 1717 is inapplicable to other statutes. Counsel stated that *Reynolds Metals Co.*, 25 Cal. 3d 124, and *Xuereb*, 3 Cal. App. 4th 1338, hold that, "if you're going to apply [CCCP sections] 1021 or 1032, it applies to signatories . . . ." Those cases do not stand for such a proposition. They only discuss the general proposition that CCC section 1717(a) allows reciprocal recovery of fees and does not prohibit reciprocal recovery under CCCP sections 1021 and 1032.[6]

Here, Mr. Davis was a nonsignatory to the Subcontract. However, API requested in its adversary complaint that the bankruptcy court require Mr. Davis to pay its attorneys' fees and costs. Moreover, API had enforced the attorneys' fees provision against Mr. Davis in the State Court Action and recovered $1.65 million in attorneys' fees. The bankruptcy court did not err in holding that Mr. Davis had the reciprocal right to enforce the attorneys' fees provision against API under CCCP sections 1021 and 1032.

---

[6] Although *Xuereb* discusses the relationship between CCC section 1717 and CCCP section 1021, it does so only to clarify that "Civil Code section 1717 necessarily assumes the right to enter into agreements for the award of attorney fees in litigation, a right which it in fact derives from Code of Civil Procedure section 1021. Because of its more limited scope, Civil Code section 1717 cannot be said to supersede or limit the broad right of parties pursuant to Code of Civil Procedure section 1021 to make attorney fees agreements." *Xuereb*, 3 Cal. App. 4th at 1342.

**2. Mr. Davis was the "prevailing party" in the adversary proceeding.**

API next argues that the court erred in holding that Mr. Davis was the "prevailing party," because API had prevailed in the state court and recovered $1.9 million. It contends that the bankruptcy court was bound by the state court's rulings and could not interpret the attorneys' fees provision to award anything to Mr. Davis. We disagree.

Aside from general preclusion principles, API does not cite any authority for its position that its success in the state court prevents Mr. Davis from being a "prevailing party" in the bankruptcy court. The bankruptcy court correctly held that, while API prevailed on its breach of contract claims in the state court, the § 523(a)(2) complaint was a completely separate nondischargeability action that concerned Mr. Davis' allegedly false representations and fraud in inducing API to enter into the Subcontract. While the § 523(a) claim arose out of the Subcontract, it was not an action for breach of contract. Thus, issue and claim preclusion do not apply.

Further, API contends that the bankruptcy court misconstrued CCCP section 1032, which defines "prevailing party." That section states:

> (4) "Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not

21

> recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the "prevailing party" shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.

Cal. Civ. Proc. Code § 1032(a)(4). The bankruptcy court determined that Mr. Davis was a prevailing party in the adversary proceeding because he was a "defendant as against those plaintiffs who do not recover any relief against that defendant."

The bankruptcy court was correct. In the adversary proceeding (which is separate from the state court action), Mr. Davis is clearly the prevailing party; the bankruptcy court sided with him on the §§ 727 and 523 claims, and the BAP affirmed. API did not recover any relief.

API would have us deem it the prevailing party, because it recovered more in the State Court Action than Mr. Davis recovered in the adversary proceeding. But, as the bankruptcy court correctly stated, the State Court Action was completely separate from the nondischargeability action.

Even if one regards the state court proceeding and the adversary proceeding as part of a larger whole, Mr. Davis ultimately came out on top: he has no liability to API.

The bankruptcy court did not err.[7]

**B.    The bankruptcy court did not err in calculating the fees and costs awarded to Mr. Davis.**

API argues that the bankruptcy court erred in awarding Mr. Davis over $92,000 in fees and costs. It repeats its arguments that the court failed to exclude certain of Mr. Forsley's billing entries and that his hourly rate was unreasonable. We disagree.

We must consider the reasonableness of the attorneys' fee award under California law:

> After a court decides that a contract provides attorneys' fees for a prevailing party, the court must determine the reasonableness of the requested fees. If the contract does not specify a particular sum, **"it is within the trial court's discretion to determine what constitutes reasonable attorneys' fees."** *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1507 (1987) (citations omitted). In California, this inquiry "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "The reasonable hourly rate is that prevailing in the community for similar work." *Id.* (citations omitted). "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal

---

[7] The bankruptcy court also found that, as T.O.'s alter ego, Mr. Davis was entitled to enforce the Subcontract's attorneys' fees provision against API and that API was judicially estopped to deny that Mr. Davis could recover his fees. Because we hold that the bankruptcy court did not err in awarding Mr. Davis his attorneys' fees under two California state statutes, we do not reach these issues.

services provided." *Id.* (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) (in bank)). . . . "When apprised of the pertinent facts, **the trial court may rely on its own experience and knowledge in determining the reasonable value of the attorney's services**." *Id.* (citation omitted).

*Okada v. Whitehead*, No. 8:15-CV-01449-JLS-KES, 2017 WL 2626990, at *2 (C.D. Cal. June 12, 2017) (emphases added).

1. **API does not establish that the fees included work for other clients or on other matters.**

API complains that the bankruptcy court failed to exclude from Mr. Forsley's billing statements work for multiple clients and work on unrelated matters. It contends that Mr. Forsley's firm was representing multiple clients (including Mr. Davis' wife) in related proceedings, and the "billing statements do not distinguish which of his many clients he is representing and billing . . . ." It speculates that Mr. Forsley's use of the term "client" in his billing statements could refer to other individuals besides Mr. Davis.

API's arguments are meritless. Mr. Forsley testified in his declaration that the billing statements were for "work performed for Debtor including this Adversary Matter." He further stated that his firm creates bills for each of the clients. The inclusion of Mr. Davis' wife's name on the billing statements was irrelevant, because Mr. Forsley represented that he did not do any work on the adversary proceeding for Mrs. Davis. API offers only

24

conjecture that Mr. Forsley billed Mr. Davis for work done on behalf of other clients.[8]

## 2. API does not establish that the fees or rates were excessive.

API also contends that Mr. Forsley's hourly rate is unreasonable and that he over-billed for simple legal work.

The bankruptcy court painstakingly combed through Mr. Forsley's time entries and deducted fees for anything not concerning the § 523 claim. It said that it disallowed fees for the § 727 claim, redacted entries, items lumped with other litigation, items concerning other clients, and appellate matters. At the hearing, API challenged the court's arithmetic, but it failed to prove that the court did not make the stated reductions. The court did not abuse its discretion in determining that the fee award of $91,390.92 was reasonable.

API claims that Mr. Forsley misled the bankruptcy court about his hourly rate, because his rate started at $350 per hour and increased over seven years to $425 per hour. But although the court stated generally that Mr. Forsley's hourly rate was $425, it based its calculations on the rate that Mr. Forsley actually billed. API offers no evidence that the bankruptcy

---

[8] API argues that Mr. Forsley's billing entries suggest that Mr. Forsley might have been seeking payment of Mr. Davis' fees from another person or entity and that it is unknown who was actually paying the firm's bills, so the court must disallow the fees. But the court correctly pointed out at the hearing that it does not matter who paid for Mr. Davis' representation, just that Mr. Forsley was doing work for Mr. Davis. API offers no authority to the contrary.

court merely multiplied the number of billed hours by $425. Nor does API offer any evidence that the $425 hourly rate was excessive or unreasonable. The bankruptcy court found that $425 per hour was reasonable for an attorney in Los Angeles with Mr. Forsley's experience, and we discern no abuse of discretion.

API also questions the work that Mr. Forsley performed on the § 523 claim. It complains that Mr. Forsley did not engage in much discovery or offer many witnesses or exhibits at trial. But it never claims that Mr. Forsley did not actually perform the work or that the hours billed were unreasonable. Even though Mr. Forsley may not have called many direct witnesses, the billing records show that Mr. Forsley prepared for each witness and reviewed and prepared the evidence.

### 3. The hours that Mr. Forsley spent on his supplemental declaration were not unreasonable.

Finally, API argues that the hours Mr. Forsley claimed to have worked are unreasonable. It appears to argue that Mr. Forsley did not edit his billing entries as the court had directed.

The gist of API's argument seems to be that Mr. Forsley did not do enough work to comply with the court's directives, not that the time he spent doing so was unreasonable. "In awarding fee preparation expenses, the time expended should bear a reasonable relationship to the dispute and amounts involved." *Great W. Savings v. Dominguez (In re Dominguez)*, 51

B.R. 171, 173 (Bankr. C.D. Cal. 1985). Mr. Forsley billed an additional 8.6 hours in response to the court's directive to submit a supplemental declaration and deduct certain items from his fee request. This work totals an additional $3,655. Given that Mr. Davis recovered a total of $92,000, we cannot say that this sum – representing less than four percent of the overall award – is unreasonable.

## CONCLUSION

The bankruptcy court did not err in determining that Mr. Davis was entitled to fees and costs pursuant to the Subcontract and awarding him $91,390.92 in fees and $956.87 in costs. We therefore AFFIRM.